Michael P. Lehmann (Cal. Bar No. 77152)
Jon T. King (Cal. Bar No. 205073)
Arthur N. Bailey, Jr. (Cal. Bar No. 248460)
HAUSFELD LLP
44 Montgomery Street, 34th Floor
San Francisco, CA 94104
Tel: (415) 633-1908
Fax: (415) 358-4980
E-mail: mlehmann@hausfeldllp.com
          jking@hausfeldllp.com
          abailey@hausfeldllp.com

Attorneys For Plaintiff Edward C. O'Bannon, Jr.

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE NCAA STUDENT-ATHLETE NAME & LIKENESS LICENSING LITIGATION | Case No.:  CV-09-1967 (CW) |
| | *(Consolidated w/Case Nos. C-09-03329-CW; C-09-04128-CW; C-09-04882-CW; C-09-05100-CW; C-09-05134-CW; C-09-05372-CW; and C-09-05378-CW)* |
| | **O'BANNON'S OPPOSITION TO ELECTRONIC ARTS, INC.'S MOTION TO STAY PROCEEDINGS PENDING APPEAL** |
| | Date:      March 25, 2010<br>Time:      2:00 p.m.<br>Judge:     Hon. Claudia Wilken |
| | Date Comp. Filed:  May 5, 2009 |

# TABLE OF CONTENTS

Page

STATEMENT OF ISSUES TO BE DECIDED ..................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 2

I.      INTRODUCTION .................................................................................. 2

II.     BACKGROUND ................................................................................... 4

III.    ARGUMENT ........................................................................................ 6

        A.    THE ANTI-SLAPP STATUTE DOES NOT APPLY TO
              O'BANNON'S ANTITRUST CLAIMS .................................... 6

        B.    EVEN IF THE ANTI-SLAPP STATUTE APPLIED TO FEDERAL
              CLAIMS, THERE WOULD BE NO BASIS TO STAY O'BANNON'S
              CLAIMS BECAUSE THE FIRST AMENDMENT IS NO DEFENSE
              TO ANTITRUST CLAIMS ...................................................... 7

        C.    EA FAILS TO SATISFY THE REQUIREMENTS FOR A
              DISCRETIONARY STAY ....................................................... 9

              1.    EA Is Not Likely To Prevail On The Merits .................... 9

                    a.    EA cannot show it will prevail on its appeal in
                          Keller ................................................................ 9

                    b.    Even if EA could show it would prevail on its
                          appeal, it cannot show that it is likely to prevail on
                          any motion to strike O'Bannon's antitrust claims ......... 11

              2.    EA Would Not Suffer Irreparable Harm Absent
                    A Stay ...................................................................... 12

              3.    A Stay Would Substantially Injure O'Bannon and
                    the Class .................................................................. 15

              4.    The Public Interest Favors The Litigation Of the
                    Antitrust Claims ....................................................... 15

IV.     CONCLUSION ................................................................................... 16

i

# TABLE OF AUTHORITIES

**Page**

*Bulletin Displays, LLC v. Regency Outdoor Advertising, Inc.*,
  448 F.Supp.2d 1172 (C.D. Cal. 2006) ...................................................... 3,6

*Central Hudson Gas v. Pub. Serv. Comm'n of NY*,
  447 U.S. 557 (1980) ....................................................................................... 8

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
  25 Cal.4th 387 (2001) ............................................................................... 9, 10

*CytoSport, Inc. v. Vital Pharmaceuticals, Inc.*,
  617 F.Supp.2d 1051  (E.D. Cal. 2009) ...................................................... 11

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961) ..................................................................................... 13

*F.T.C. v. Superior Court Trial Lawyers Ass'n.*,
  493 U.S. 411 (1990) ....................................................................................... 7

*Giboney v. Empire Storage & Ice Co.*,
  336 U.S. 490 (1949) ....................................................................................... 7

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
  63 F.Supp.2d 1127 (N.D. Cal. 1999) .......................................................... 6

*Hilton v. Hallmark Cards*,
  580 F.3d 874 (9th Cir. 2009) ........................................................... 2, 6, 12

*Jefferson County Sch. Dist. No. R-1 v. Moody's Inc. Servs. Inc.*,
  175 F.3d 848 (1999) ..................................................................................... 13

*Kasky v. Nike, Inc.*,
  27 Cal.4th 939 (2002) ................................................................................... 8

*Keimer v. Buena Vista Books, Inc.*,
  75 Cal.App.4th 1220 (1999) .................................................................... 3, 8

*Kirby v. Sega Of Am., Inc.*,
  144 Cal.App.4th 47 (2006) ........................................................................ 10

*Landis v. North American Co.*,
  299 U.S. 248 (1936) ..................................................................................... 16

*Liao v. Ashcroft*,
  2009 WL 636116 (N.D. Cal. Mar 11, 2009) ........................................... 2, 6

*McLaughlin v. Tilendis*,
  398 F.2d 287 (7th Cir. 1968) ........................................................................ 6

ii

**Page**

*Missouri v. National Organization for Women*,
620 F.2d 1301 (8th Cir. 1980) ........................................................... 14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ................................................................... 4, 15

*New York State Restaurant Ass'n v. New York City Bd. of Health*,
545 F.Supp.2d 363 (S.D.N.Y. 2008) ................................................. 11

*Nken v. Holder*,
129 S.Ct. 1749 (2009) ............................................................ 3, 9, 11

*Plata v. Schwarzenegger*,
2008 WL 4847080, *6 (N D. Cal. Nov.7, 2008) ................................. 11

*Rezec v. Sony Pictures Entertainment, Inc.*,
116 Cal.App.4th 135 (2004) ........................................................... 3, 8

*Sandoval-Vela v. Napolitano*,
2010 WL 431449, *4 (S.D. Cal. Jan. 29, 2010) ................................. 11

*TYR Sport Inc. v. Warnaco Swimwear Inc.*,
2009 WL 1769444, *17 (C.D. Cal. May 27, 2009) ............................ 2, 8

*United Mine Workers v. Pennington*,
381 U.S. 657 (1965) ...................................................................... 14

*Wine & Spirits Retailers, Inc. v. Rhode Island*,
418 F.3d 36 (1st Cir. 2005) .......................................................... 7, 14

*Winter v. DC Comics*,
30 Cal.4th 881 (2003) ................................................................. 9, 10

**STATUTES, RULES AND REGULATIONS**

California Code of Civil Procedure
§ 425.17 ................................................................................ 7
§ 425.16 ............................................................................. 6, 7

iii

**STATEMENT OF ISSUES TO BE DECIDED**

I.      Does Electronic Arts, Inc. ("EA")'s appeal of this Court's denial of its motion to strike the right to publicity claims in the *Keller v. Electronic Arts, Inc.,* No. CV-09-1967 CW (N.D. Cal.) ("*Keller*") action brought pursuant to California's anti-SLAPP statute support a stay of Edward O'Bannon's ("O'Bannon") federal antitrust claims, which are not subject to the anti-SLAPP statute?

II.      Does the First Amendment immunize EA from liability for O'Bannon's antitrust claims?

III.      Has EA satisfied the four factors governing discretionary stays including a strong showing of likelihood of success on the merits of its appeal in *Keller* and a strong showing of the likelihood of success of an anti-SLAPP motion to strike O'Bannon's antitrust claims?

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Electronic Arts, Inc.'s ("EA") motion to stay all proceedings and discovery in the consolidated action until the Ninth Circuit rules on EA's appeal should be denied insofar as EA seeks to stay the antitrust case brought by Plaintiff Edward C. O'Bannon Jr. ("O'Bannon") against the National Collegiate Athletic Association ("NCAA") and Collegiate Licensing Company ("CLC").  The complaint in *O'Bannon v. NCAA*, Civ. 09-3329 CW (N.D. Cal.) ("*O'Bannon*") does not currently include EA as a defendant.  Even if, as anticipated, the Consolidated Amended Complaint to be filed on March 10, 2010 includes EA as a defendant with respect to antitrust claims, the antitrust claims O'Bannon would allege against EA are not subject to an anti-SLAPP motion, and therefore the Court should not impose a discretionary stay.

EA's appeal of this Court's denial of the anti-SLAPP motion could not possibly affect O'Bannon's antitrust claims because they are federal claims to which California's Anti-SLAPP statute does not apply.  *Hilton v. Hallmark Cards*, 580 F.3d 874, 881 (9th Cir. 2009) ("*Hilton*"); *Liao v. Ashcroft*, No. C 08-2776 PJH, 2009 WL 636116 at *3 (N.D. Cal. Mar. 11, 2009) ("*Liao*").  Moreover, EA's appeal could not affect O'Bannon's claims because the First Amendment is not a defense to antitrust claims. *TYR Sport Inc. v. Warnaco Swimwear Inc.*, No. SACV 08-00529-JVS (MLGx), 2009 WL 1769444 at *17 (C.D. Cal. May 27, 2009) ("*TYR*").

In its motion, EA asks the Court to stay all proceedings and discovery against EA – including those claims brought by O'Bannon – because his claims "share the same facts and underlying legal theory as Keller's."  Motion to Stay, at 1:23-26.  That statement ignores the difference between claims based on the California right to publicity statute and federal causes of action dealing with antitrust violations, to which the First Amendment is not a defense and the anti-SLAPP motion statute does not apply.  None of O'Bannon's counts include any claim that has anything to do with any expressive speech-related rights of EA.  If O'Bannon were to include his claims in a consolidated complaint filed with Samuel Keller ("Keller") as requested

2

1    by this Court, O'Bannon still advances no claims against EA or any other defendant that

2    implicate either artistic speech or core speech.

3        EA's motion to strike invokes only the First Amendment and the free speech guarantees

4    of the California Constitution. Conversely, the *O'Bannon* complaint, if it implicates speech at

5    all, involves only commercial speech used as a vehicle to conduct an unlawful antitrust

6    conspiracy. Thus, even if the Ninth Circuit were to reverse this Court's denial of EA's anti-

7    SLAPP motion addressing Keller's right of publicity claims, such reversal would not affect the

8    antitrust claims.

9        EA's motion is based on the false premise that because EA produces video games, the

10   content of which may be subject to First Amendment protection as expressive work, EA should

11   have blanket immunity for all of its business dealings including its participation in illegal

12   boycotts and price-fixing conspiracies. California courts have rejected similar arguments in

13   holding that sellers of creative works cannot use the anti-SLAPP statute to strike unlawful

14   competition claims based on commercial speech. *Rezec v. Sony Pictures Entertainment, Inc*.,

15   116 Cal.App.4th 135, 142 (2004) ("*Rezec*"); *Keimer v. Buena Vista Books, Inc*., 75 Cal.App.

16   4th 1220, 1231 (1999) ("*Keimer*").

17       Even if the conduct underlying the claims in *Keller* subject to EA's appeal was the

18   same as the conduct underlying O'Bannon's claims, which it is not, the applicability of the

19   anti-SLAPP statute depends on the particular claim, the underlying conduct alleged. *Bulletin*

20   *Displays, LLC v. Regency Outdoor Advertising, Inc*., 448 F.Supp.2d 1172, 1180 (C.D. Cal.

21   2006) ("*Bulletin Displays*").

22       Moreover, EA simply does not satisfy the requirements for a discretionary stay, which

23   are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on

24   the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether

25   issuance of the stay will substantially injure the other parties interested in the proceeding; and

26   (4) where the public interest lies." *Nken v. Holder*, 129 S.Ct. 1749, 1756 (2009).[1]  EA

27   ─────────────────────
[1] Although EA concedes that these are the four factors governing its stay motion, EA fails to
28   discuss, or even list, these factors until the eleventh page of its brief.

1   completely fails to make any showing that it is likely to succeed on the merits, even on its

2   appeal of the Court's ruling on Keller's claims against EA.

3        This Court correctly denied EA's motion because neither of the requirements of the

4   anti-SLAPP statute was met:  (1) EA's use of the likenesses of former college athletes is not

5   protected activity under the First Amendment; and (2) Keller had demonstrated a sufficient

6   likelihood of success on the merits.  *Keller v. Electronic Arts, Inc*., No. C 09 1967 CW, 2010

7   WL 530108 at *3-*9 (N.D. Cal. Feb. 8, 2010) (*Keller* Order").  The Court's ruling was well

8   reasoned and strongly supported by the case law.  In its brief reference to this Court's analysis,

9   EA completely fails to make the required "strong showing" that it is likely to succeed on the

10  merits.  Moreover, to justify a stay of O'Bannon's claims, EA would have to make a strong

11  showing that it is likely to succeed in an anti-SLAPP motion to strike O'Bannon's claims.

12       EA does not and could not show that it is likely to succeed in an anti-SLAPP motion

13  addressing O'Bannon's claims because the anti-SLAPP statute does not apply to federal claims

14  and the First Amendment does not provide immunity for antitrust violations.  The other factors

15  also do not support a discretionary stay.  EA will suffer no injury from the continued litigation

16  of the antitrust claims, which are not subject to the anti-SLAPP statute, and a stay would allow

17  the antitrust conspiracy to continue unabated, causing additional antitrust injury to O'Bannon

18  and the Class Members.  Moreover, the public interest strongly favors enforcement of the

19  antitrust laws.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629

20  (1985) ("*Mitsubishi*").

21       Accordingly, the Court should deny EA's motion.

## II.   BACKGROUND

23       On July 21, 2009, the *O'Bannon* class action complaint was filed against the NCAA

24  and CLC, alleging both entities conspired with its licensees and others to violate section 1 of

25  the Sherman Act and were subject to claims for unjust enrichment and accounting.  The crux of

26  the complaint is that the NCAA and CLC engaged in a price-fixing conspiracy and group

27  boycott/refusal to deal, which has prevented former student athletes who competed for the

28

O'BANNON'S OPPOSITION TO ELECTRONIC ART'S MOTION TO STAY          Case No. CV-09-1967-CW

1  NCAA from receiving compensation in connection with the commercial exploitation of their

2  images after completing their college athletic competition.

3       O'Bannon alleges the "images and likenesses of college student-athletes and former

4  student-athletes also appear in video games devoted to NCAA college basketball and football."

5  *O'Bannon* Complaint ("OBC") ¶135.  O'Bannon's complaint alleges information about EA's

6  sports-based video games and describes the financial benefits of NCAA's license with EA as

7  as the background for the antitrust claims.  The complaint further alleges that defendants

8  maintained a "continuing agreement, understanding, and concert of action . . .  the terms of

9  which were to artificially fix, depress, maintain, and/or stabilize prices received by [O'Bannon]

10  and Class members for use and sale of their images at zero dollars in the United States, its

11  territories and possession.  OBC ¶ 173.  The specific antitrust conduct at issue is whether

12  defendants: (1) agreed to artificially fix, depress, maintain, and/or stabilize prices paid to

13  O'Bannon and Class members for the use and sale of their images; (2) agreed to limit output of

14  the use or sale of the images of O'Bannon and other class members; (3) agreed to boycott and

15  refused to deal with O'Bannon and class members regarding compensation for the use and sale

16  of their images; and (4) implemented and monitored the conspiracy among cartel members.

17  OBC ¶ 176.

18       On July 29, 2009, EA filed a motion to strike pursuant to California's anti-SLAPP

19  statute in *Keller*, which had consolidated with *O'Bannon*.  On February 8, 2010, the Court

20  denied EA's motion and denied the NCAA's and CLC's motions to dismiss O'Bannon's

21  complaint, holding that the antitrust and unjust enrichment counts were sufficient and directing

22  O'Bannon to amend his claim for an accounting.

23       EA filed a Notice of Appeal on February 18, 2010, appealing this Court's decision with

24  respect to its motion to strike.  O'Bannon's antitrust claims, however, remain unaffected by

25  EA's appeal.

26  ////

27  ////

28

5

### III.    ARGUMENT

### A.    THE ANTI-SLAPP STATUTE DOES NOT APPLY TO O'BANNON'S ANTITRUST CLAIMS

O'Bannon's antitrust claims are based on federal question jurisdiction and therefore are not subject to California's anti-SLAPP statute. *Hilton*, 580 F.3d at 881. Accordingly, even if the Court of Appeals were to reverse this Court's ruling in *Keller*, O'Bannon's antitrust claims would not be affected because "[t]he anti-SLAPP statute does not apply to federal law causes of action." *Id. See also Liao*, 2009 WL 636116 at *3 ("[a]lthough § 425.16 applies to state law claims brought in federal court, it does not apply to federal question claims in federal court because such application would frustrate substantive federal rights"); *Globetrotter Software, Inc. v. Elan Computer Group, Inc*. 63 F.Supp.2d 1127, 1130 (N.D. Cal. 1999).

Precedents support O'Bannon's view of the law. In *Bulletin Displays*, the court denied a SLAPP motion to strike federal claims, including a federal antitrust claim, holding that state law cannot immunize conduct that is wrongful under a federal statute, because "[a] construction of the federal statute which permitted a state immunity defense to have a controlling effect would transmute a basic guarantee into an illusory promise, and the supremacy clause of the Constitution insures that the proper construction may be enforced." 448 F.Supp.2d at 1182, quoting *McLaughlin v. Tilendis*, 398 F.2d 287, 290 (7th Cir. 1968).

As the court in *Bulletin Displays* concluded:

> California has no interest in dictating rules of procedure or substance applicable to federal claims brought in federal court. Consequently, the Court finds that the anti-SLAPP statute is inapplicable to Bulletin's RICO and Clayton Act claims

*Id*.

Accordingly, the stay must be denied because EA's appeal of this Court's ruling in *Keller*, even if successful, could have no possible effect on O'Bannon's antitrust claims, to which the anti-SLAPP statute does not apply.[2]

---

[2] O'Bannon alleges state law claims against the NCAA and CLC for unjust enrichment and accounting but will not include EA as a Defendant in those counts.

**B.     EVEN IF THE ANTI-SLAPP STATUTE APPLIED TO FEDERAL CLAIMS, THERE WOULD BE NO BASIS TO STAY O'BANNON'S CLAIMS BECAUSE THE FIRST AMENDMENT IS NOT A DEFENSE TO ANTITRUST CLAIMS**

The First Amendment does not immunize a speaker from civil or criminal liability simply because the violations were committed through speech. *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949). Accordingly, the government may regulate speech – whether commercial or non-commercial – concerning unlawful activity, such as that alleged in the *O'Bannon* complaint including contracting to and furthering a conspiracy to restrain trade and to depress, fix, maintain, and/or stabilize the prices paid to O'Bannon and other class members for the use of licensing and sale of their images – activities prohibited by the antitrust laws, including section 1 of the Sherman Act.

The only exception to the rule that the First Amendment is not a defense to antitrust claims is limited to the exercise of core speech rights, such as petitioning for legislative change or assembling to boycott merchants engaging in discriminatory practices. *Wine & Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 52 (1st Cir. 2005) ("*Wine & Spirits*"). Where, as here, there is nothing "uniquely expressive about the concerted commercial activity," the First Amendment does not except the enforcement of otherwise valid antitrust laws. *Id.* at 53. As the Supreme Court has stated, "[t]he most blatant, naked price-fixing agreement is a product of communication, but that is surely not a reason for viewing it with special solicitude." *F.T.C. v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 431 (1990). Accordingly, the First Amendment provides no defense to O'Bannon's claims that EA conspired with the NCAA and CLC to violate the antitrust laws.

In addition, California Code of Civil Procedure § 425.17 provides that the anti-SLAPP statute does not apply to commercial speech by providing that § 425.16 is inapplicable to "any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services." Here, O'Bannon's antitrust claims, to the extent they address speech at all,

7

1    involve commercial speech.  *See Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of*

2    *NY*, 447 U.S. 557, 566 (1980); *Kasky v. Nike, Inc*., 27 Cal.4th 939, 959 (2002).

3        Moreover, even if the anti-SLAPP statute's exclusion for commercial speech did not

4    apply here, O'Bannon's allegations concern EA's non-speech conduct, such as conspiracy,

5    collusion, and general boycott, and would still survive an anti-SLAPP challenge.  *See TYR.*,

6    2009 WL 1769444 at *17.

7        Though EA attempts to characterize the relevant speech as its artistic expression in

8    designing and creating the video games, which contain images of O'Bannon and other class

9    members at issue, this "speech" is not the basis for O'Bannon's antitrust claims.  Instead,

10   O'Bannon's claims are directed at the "speech" among co-conspirators who formed the

11   "continuing contract, combination, and conspiracy in restraint of trade, which serve to

12   artificially depress, fix, maintain, and/or stabilize the prices paid to O'Bannon and other class

13   members for the use of, and to limit supply for, licensing and sale of their images . . . in

14   violation of Section 1 of the Sherman Act" or the conduct involved in "a continuing contract,

15   combination, and conspiracy in restraint of trade to effectuate a horizontal group boycott of

16   Class Members."  OBC ¶¶ 180, 193.  The behavior at issue is not expressive or artistic speech;

17   the relevant behavior is the contracting, combining, and conspiring to fix the market and

18   refusal to deal.  As such, EA may not assert First Amendment or California freedom of speech

19   rights as a defense or as grounds to seek the application of a litigation stay premised on anti-

20   SLAPP grounds to O'Bannon's antitrust claims.

21       EA's assertion that because some aspects of the creation of the video games may be

22   expressive speech, it is entitled to blanket immunity for all its business dealings has been

23   soundly rejected in the context of the anti-SLAPP statute.  *See Keimer*, 75 Cal.App.4th at 1231

24   (rejecting defendant's argument that because defendant sold books, the content of which is

25   protected by the First Amendment, the First Amendment may be used as a defense to claimed

26   violations of California's Unfair Practices Act); *Rezec*, 116 Cal.App.4th at 142 (rejecting

27

28

8

1  argument that because motion pictures are expressive works, the anti-SLAPP statute applied to

2  claims against a movie studio based on unfair competition in advertising movies).

3
4  **C.      EA FAILS TO SATISFY THE REQUIREMENTS FOR A DISCRETIONARY STAY**

5          To decide whether a stay of litigation pending judicial review is appropriate, a court

6  must consider the four factors: (1) whether the stay applicant has made a strong showing that it

7  is likely to success on the merits; (2) whether the applicant will be irreparably injured absent a

8  stay; (3) whether issuance of the stay will substantially injure the other parties interested in the

9  proceeding; and (4) where the public interest lies.  *Nken v. Holder*, 129 S.Ct. 1749, 1756

10  (2009) ("*Nken*").  The first two factors are the most critical to determining whether a stay is

11  appropriate.  *Id.* at 1761.  None of these factors favor the requested stay of all proceedings and

12  discovery as to the antitrust claims against EA in the O'Bannon case.

13                 **1.      EA Is Not Likely To Prevail On The Merits**

14                         **a.      EA cannot show that it will likely prevail on its appeal in *Keller***

15          The basis of EA's motion to stay proceedings is its appeal to the Ninth Circuit of this

16  Court's order denying EA's motion to strike on anti-SLAPP grounds.  In order to prevail on

17  appeal, EA must show this Court was wrong in denying the motion to strike and erred in

18  finding EA did not significantly transform the likenesses of former athletes for its video games.

19  EA will not be able to make this showing.

20          In its February 18, 2010 Order, this Court considered EA's defenses that Keller's right

21  of publicity claims are barred by the First Amendment and California law and rejected each

22  defense.  *Keller* Order, 2010 WL 530108 at*3-*7.  With respect to the transformative use

23  defense, this Court did not find sufficient transformative elements in EA's depiction of the

24  former collegiate athletes because their likenesses were not so transformed that they had

25  become EA's own expression rather than the celebrity's likeness.  *Id.* at *3-*5.  The Court

26  analyzed EA's video games in light of the holdings of *Comedy III Prods., Inc. v. Gary*

27  *Saderup, Inc.*, 25 Cal.4th 387, 391 (2001) ("*Comedy III*") and *Winter v. DC Comics*, 30 Cal.4th

28

9

881, 886 (2003) ("*Winter*").  The Court accurately examined any transformative nature of the athletes pictured in the EA video games, finding them more akin to the three stooges, taken from their normal background of the silver screen and transported via lithograph and silkscreen onto a T-shirt, than recasting the musician brothers Johnny and Edgar Winter as giant worms in a comic book.  *Id*. at *4-*5.

This Court's decision is well-reasoned and appropriately takes into account and applies the law with respect to whether a depiction of a celebrity figure is sufficiently transformative to constitute expressive speech or art.  Thus, EA will not prevail on appeal.  EA's motion to stay attempts to find deficiencies in the Court's holding, mainly that the Court did not have support for its assertion that the "likeness itself must be modified in some fanciful way" in order to be sufficiently transformative; EA further suggests the cases cited by the Court do not hold transformation of the likeness itself is necessary in all cases or that the public has the right to make a fair use of a celebrity image.  Motion to Stay, at 11:18-12:6.  None of these arguments will prevail because courts have held that courts can resolve the question of whether a likeness is sufficiently transformative purely "by viewing the work in question and, if necessary, comparing it to an actual likeness of the person or persons portrayed."  *Winter*, 30 Cal.4th at 891-892, citing *Comedy III*, 25 Cal.4th at 387.  Accordingly, this Court was correct in analyzing cases like *Comedy III* and *Winter* or *Kirby v. Sega Of Am., Inc*., 144 Cal.App.4th 47 (2006), by concentrating on the depiction of the celebrity rather than all of the surrounding elements.  *Keller* Order, 2010 WL 530108 at*5-*6.

This Court's analysis and holding with respect to the inapplicability of the public interest also cannot be attacked on appeal because all of the cases the Court cited involve statistics and facts, which were not changed or capable of being changed; unlike those situations, however, EA does not ensure that the score in a video game reflects what that score would have actually been when the real teams played together.  *See id*.  Accordingly, this Court properly distinguished cases cited by EA in its motion to strike from those on which it relied in its decision.

EA has entirely failed to satisfy the first factor requiring a strong showing of likely success on the merits. EA did not bring any new evidence or law to light that this Court erred in deciding the motion to strike; it only stated the Court incorrectly analyzed cases without providing further explanation as to how the Court did so. *See Nken*, 129 S.Ct. at 1756. *See also CytoSport, Inc. v. Vital Pharmaceuticals, Inc*., 617 F.Supp.2d 1051, 1086 (E.D. Cal. 2009) (stay denied where defendant had "not shown that it is likely it will prevail on its appeal, that the balance of hardships tips considerably in its favor or that the public interest is best served by a stay"); *New York State Restaurant Ass'n v. New York City Bd. of Health*, 545 F.Supp.2d 363, 366-67 (S.D.N.Y. 2008)(denying stay where party failed to make strong showing that its commercial speech rights under First Amendment were violated); *Sandoval-Vela v. Napolitano*, No. 10-CV-0059 IEG (RBB), 2010 WL 431449 at *4  (S.D. Cal. Jan. 29, 2010) (Petitioner failed to make a strong showing that he is likely to succeed on the merits of his appeal where he failed to meet the "heavy burden of demonstrating that the court of appeals will overturn" the trial court); *Plata v. Schwarzenegger*, No. C01-1351 TEH, 2008 WL 4847080 at *6 (N D. Cal. Nov.7, 2008).

### b. Even if EA could show it would prevail on its appeal, it cannot show that it is likely to prevail on any motion strike O'Bannon's antitrust claims

EA has made absolutely no showing that it would prevail on moving to strike O'Bannon's claims pursuant to California's anti-SLAPP statute.  Neither this Court's decision with respect to the motion to strike nor the anti-SLAPP issues on appeal to the Ninth Circuit address O'Bannon's claims.  In fact, EA's motion to stay does not provide any support for staying O'Bannon's antitrust claims.  Even if EA could show that it was likely to succeed on its appeal in *Kelle*r, which it has not done, it could not parlay such a showing into a stay of O'Bannon's claims without also showing that it was likely to succeed on the merits of an anti-SLAPP motion to strike O'Bannon's claims.  As discussed above, EA could not possibly succeed on an anti-SLAPP motion to stike O'Bannon's claims for the additional reasons that

1   federal claims are not subject to the anti-SLAPP statute and that the First Amendment is not a

2   defense to antitrust violations.[3]

3       O'Bannon's antitrust claims allege EA acted to contract, combine, or conspire to

4   unreasonably restrain trade, either by engaging in price fixing and setting the price paid to class

5   members for their images as zero dollars or by restraining trade to effectuate a horizontal group

6   boycott or refusal to deal.  OBC ¶ 176.  A motion to strike brought on anti-SLAPP grounds

7   would always fail as to the antitrust claims, and EA could not possibly meet the requirement of

8   a strong showing of success on the merits required for a stay.  In fact, none of the cases cited

9   by EA demonstrate any likelihood of success on an appeal of an anti-SLAPP motion as it

10  pertains to antitrust claims, as none of the cases EA cites include any discussion of Sherman

11  Act violations and/or a defendant's ability to use the First Amendment or the right to free

12  speech as a defense to antitrust claims.

13      EA's failure to cite a single case in which California's anti-SLAPP statute was used to

14  prevent a suit asserting antitrust claims from going forward requires denial of the motion.

15  As discussed in section III. B, above, EA's First Amendment or free speech rights cannot

16  immunize EA from civil or criminal liability, including liability for conspiring to restrain trade

17  in violation of the antitrust laws, simply because such liability arises through speech.  EA is not

18  exempt from litigating any and all claims against it simply because it creates and sells video

19  games that may be expressive works of art or speech.

20          **2.      EA Would Not Suffer Irreparable Harm Absent A Stay**

21      EA fails to identify any irreparable harm that it would suffer if O'Bannon's claims were

22  not stayed pending EA's interlocutory appeal in *Keller*.  Indeed, since O'Bannon's claims are

23

24  [3] Moreover, EA could not possibly succeed in an anti-SLAPP motion against O'Bannon's
    claims for the additional reason that O'Bannon could show that he will likely succeed
25  on the merits of his antitrust claims.  In denying the NCAA's and CLC's motion to dismiss
    O'Bannon's claims, including his claim that they conspired with EA, this Court determined
26  that those claims have sufficient merit to survive Defendant's motion to dismiss.  *O'Bannon v.
    NCAA*, No. C 09-3329 CW, 2010 WL 445190 at *3-*6 (N.D. Cal. Feb. 8, 2010).  A federal
27  complaint cannot be dismissed on an anti-SLAPP motion before discovery where plaintiff can
    "state and substantiate a legally sufficient claim."  *Hilton*, 580 F.3d at 888.

28

1    not subject to the anti-SLAPP statute that is the basis for EA's appeal, denial of a discretionary

2    stay could cause no conceivable injury to EA.

3        EA's citation to *Jefferson County Sch. Dist. No. R-1 v. Moody's Inc. Servs. Inc.*, 175

4    F.3d 848 (10th Cir. 1999) ("*Jefferson County*"), is inapposite.  In *Jefferson County*, the plaintiff

5    also contended that the defendant's publication of an article itself was a violation of the

6    antitrust laws.  *Id.* at 860.  The same is not true for O'Bannon's claims.  Though EA's making

7    and production of the NCAA video games could be the only tie among EA, the NCAA, and

8    CLC as well as the reason EA had to communicate with NCAA and CLC, the making of the

9    video games is not the basis of the antitrust claims.  Instead, the restraint of trade and

10   agreement to artificially fix prices paid to O'Bannon and other Class Members for the use and

11   sale of their images as well as the agreement to boycott and to refuse to deal with O'Bannon

12   and other Class Members regarding compensation for the use of their images is the basis for

13   the claim.  OBC ¶176.

14       The *Noerr-Pennington* doctrine also provides no help to EA.  EA mischaracterizes the

15   purpose of the *Noerr-Pennington* doctrine.  In *Noerr*, the alleged conspiracy was that railroad

16   companies engaged a public relations firm to conduct a publicity campaign against the trucking

17   industry so that the railroad industry could capture more business in transporting heavy freight.

18   *Eastern Railroad Presidents Couference v. Noerr Motor Freight, Inc*., 365 U.S. 127, 129

19   (1961).  The Supreme Court affirmed that when a restraint upon trade or monopolization is the

20   result of valid governmental action, there can be no violation of the Sherman Act; in addition,

21   there is no antitrust violation when two or more individuals, or in this case, railroad companies,

22   associate to persuade the legislature to take an action that may create a restraint upon trade.  *Id.*

23   at 135-136.  This holding is irrelevant to O'Bannon's alleged antitrust violations.  EA was not

24   attempting to lobby the government; it was not trying to associate with the NCAA or CLC to

25   lobby the government, and the two organizations were not acting in accordance with any valid

26   government action that permitted a restraint on trade.

27

28

13

1    *United Mine Workers v. Pennington*, 381 U.S. 657, 670-671 (1965), which EA cites,

2    also involved an attempt to influence public officials, because the "speech" at issue was

3    ultimately the defendant's attempt to influence the government in its decision making, a right

4    the First Amendment undoubtedly protects, rather than speech which was among co-

5    conspirators attempting to fix prices or control the market.  Thus, the court held that the

6    Sherman Act had not been violated.  In *Missouri v. National Organization for Women*, 620

7    F.2d 1301, 1302 (8th Cir. 1980), for example, the National Organization for Women ("NOW")

8    chose to hold its conventions only in states that had passed the Equal Rights Amendment

9    ("ERA"); states that had not passed the ERA claimed they were injured because their

10   convention centers as well as industries involved in the convention trade "lost" money when

11   NOW did not hold conventions in those states.  The court held that the First Amendment

12   protected NOW's decision to boycott the convention centers in certain states and, because

13   NOW's action were so far outside of the scope of what the Sherman Act was intended to

14   protect against, the Sherman Act was never intended to apply to actions like NOW's boycott.

15   *Id.* at 1309.

16    O'Bannon is not alleging anything similar to a boycott by a non-commercial group

17   with political aims in *NOW*; O'Bannon's claims go to the heart of what the Sherman Act was

18   intended to protect against: restraints on trade and conspiracies to fix prices and exclude

19   competitors.  *See* OBC ¶176.  Furthermore, the "speech" used to carry out the contracts,

20   combinations, and conspiracies among the EA, NCAA, and CLC contains no political message

21   and is not intended to influence legislation.

22    Accordingly, EA would not suffer any harm should this Court deny the discretionary

23   stay and allow O'Bannon to go ahead and litigate his antitrust claims against EA.  EA has

24   provided no law in support of its argument that this Court should impose a discretionary stay.

25   Furthermore, by requesting this Court deny any discretionary stay, O'Bannon is not requesting

26   EA to litigate anything it would not otherwise be required to litigate.  EA's "speech" is not that

27   protected by a core speech right.  *See Wine & Spirits*, 418 F.3d at 52.

28

### 3.   A Stay Would Substantially Injure O'Bannon and the Putative Antitrust Class

O'Bannon and the putative Class Members he seeks to represent would be substantially injured if the Court issues a discretionary stay.  EA has a very low likelihood of prevailing on appeal.  Thus, a stay would delay resolution of O'Bannon's antitrust claims.  Furthermore, with the NCAA and CLC both filing their own motions to stay, it is clear that the defendants in the consolidated case seek to delay discovery and resolution of this case.  Courts do not regularly grant discretionary stays when defendants do not care to deal with litigation.

The delay that would result from the stay EA seeks would allow the antitrust violations to continue unabated which will unquestionably cause serious financial injury to O'Bannon and the members of the putative Class he represents.  Accordingly, this factor also compels denial of a discretionary stay.

### 4.   The Public Interest Favors the Continued Litigation of the Antitrust Claims

The public has a compelling interest in having the antitrust laws enforced.  In fact, courts have found the antitrust laws as "fundamental[ly] importan[t] to American democratic capitalism." *Mitsubishi*, 473 U.S. at 634.  In *Mitsuibishi*, the Supreme Court noted

> A claim under the antitrust laws is not merely a private matter. The Sherman Act is designed to promote the national interest in a competitive economy; thus, the plaintiff asserting his rights under the Act has been likened to a private attorney general who protects the public's interest.

*Id.* at 635.

O'Bannon's antitrust claims are in no way hostile to the public interest.  In fact, O'Bannon seeks to promote the public interest by ensuring that corporations do not take advantage of individuals by conspiring to engage in price fixing and to set the price paid to class members for their images as zero or to restrain trade to effectuate a horizontal group boycott or refuse to deal.  The requested stay would unnecessarily delay enforcement of the

15

1   antitrust law and allow defendants to continue to violate the antitrust laws, contrary to public

2   interest.

3        EA cites *Landis v. North American Co.*, 299 U.S. 248, 254 (1936) which holds that:

4   "the power to stay proceedings is incidental to the power inherent in every court to control the

5   disposition of the causes on its docket with economy of time and effort for itself, for counsel,

6   and for litigants."  Here, denial of the stay would promote judicial economy for the Court and

7   litigants because there is no reason that O'Bannon's antitrust claims -- which are not subject to

8   the anti-SLAPP statute and have already been ruled sufficient as against a motion to dismiss --

9   should not go forward.

10       Accordingly, the fourth factor also strongly supports denial of a stay of O'Bannon's

11  claims.

12  **IV.    CONCLUSION**

13       For the reasons stated above, the Court should deny the motion for a discretionary stay

14  as to O'Bannon's claims.

15                     Respectfully submitted,

16  Dated:  March 4, 2010           HAUSFELD LLP

17

18                      By  /s/ Michael P. Lehmann

19                          Michael P. Lehmann

20                          Jon T. King

                        Arthur N. Bailey, Jr.

21                    Attorneys for Plaintiff Edward C. O'Bannon, Jr.

22

23

24

25

26

27

28  S:\NCAA\Pleadings\opposition ea motion.stay - final 03-04-10.doc

O'BANNON'S OPPOSITION TO ELECTRONIC ART'S MOTION TO STAY     Case No. CV-09-1967-CW

1

## CERTIFICATE OF SERVICE

2

    I am employed in the County of San Francisco, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is One California Street, Third Floor, San Francisco, CA 94111.

3

4

    On the date set forth below, I served a true and correct copy of the following document:

5

### O'BANNON'S OPPOSITION TO ELECTRONIC ARTS, INC.'S MOTION TO STAY PROCEEDINGS PENDING APPEAL

6

7

with the Clerk of the Court using the Official Court Electronic Document Filing System which served copies on all interested parties registered for electronic filing.  The following parties not registered for electronic filing will be served on March 4, 2010 by U.S. Mail:

8

9

Carl A. Taylor Lopez
Lopez & Fantel
1510 114th Avenue
Seattle, WA 98122-4024

Jack Simms
Boies Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC 20015

10

11

Jonathan W. Cuneo
Cuneo Gilbert & Laduca LLP
507 C Street, NE
Washington, DC 20002

Tanya Chutkan
Boies Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC 20015

12

13

14

    I also certify that I caused a true and correct Chambers Copy of the foregoing document to be hand-delivered to the following Judge pursuant to Civil L.R. 3-12(b) by noon of the following day:

15

16

Hon. Claudia Wilken
U.S. District Court
Northern District of California
Oakland Division
Courtroom 2, 4th Floor
1301 Clay Street
South Tower, Suite 400 S
Oakland, CA 94612-5212

17

18

19

20

21

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

22

    Executed on March 4, 2010 at San Francisco, California.

23

24

25

     /s/ Linda Rorem
     Linda Rorem

26

27

28

17