Robert B. Carey
Leonard W. Aragon
HAGENS BERMAN SOBOL SHAPIRO LLP
2425 East Camelback Road, Suite 650
Phoenix, Arizona 85016
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
rcarey@hbsslaw.com
leonard@hbsslaw.com

Stuart M. Paynter (226147)
THE PAYNTER LAW FIRM PLLC
1200 G Street N.W., Suite 800
Washington, DC 20005
Telephone: (202) 626-4486
Facsimile: (866) 734-0622
stuart@smplegal.com

Attorneys for Plaintiffs

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| In re NCAA Student-Athlete Name & Likeness Licensing Litigation | Case No. 4:09-cv-1967 CW |
|---|---|
| | **PLAINTIFF SAMUEL MICHAEL KELLER'S RESPONSE TO DEFENDANT ELECTRONIC ARTS INC.'S MOTION TO STAY PROCEEDINGS PENDING APPEAL** |
| | Date:   March 25, 2010<br>Time:   2:00 PM<br>Judge:  Hon. Claudia Wilken |
| | ACTION FILED: May 5, 2009 |

PLAINTIFF'S OPP. TO ELECTRONIC ARTS' MOTION
TO STAY PENDING APPEAL – No. 4:09-CV-1967-CW       - 1 -

**TABLE OF CONTENTS** <u>Page</u>.

I. BACKGROUND ............................................................................................................... 3

II. INTRODUCTION ............................................................................................................ 4

III. ARGUMENT .................................................................................................................... 5

    A. The stay is not automatic as to *Keller's* claims. .............................................. 5

    B. Even if we assume that the California right of publicity claim is inextricably intertwined with the anti-SLAPP appeal, Plaintiff's Indiana right of publicity claim is clearly not intertwined. ................................................................................................ 7

    C. Even if the Court determines that the stay would be otherwise be automatic, EA's appeal is frivolous, and thus does not divest the Court of its jurisdiction to move forward. ........................................................................................................................ 8

    D. The Court should exercise its discretion to deny EA's motion to stay and proceed with discovery ..................................................................................................................... 9

        1) EA is unlikely to succeed on the merits of its appeal. ..................................... 10

        2) EA will not be irreparably injured if the Court denies its motion to stay and proceeds with discovery. ............................................................................................ 12

        3) Plaintiff will be injured if a stay is issued. ....................................................... 13

        4) Public interest lies in allowing the case to go forward .................................... 14

IV. CONCLUSION ............................................................................................................... 15

Plaintiff Samuel Michael Keller files the following Opposition in Response to Defendant Electronic Art's Motion to Stay Proceeding Pending Appeal. The Motion to Stay should be denied because (1) the Court still has jurisdiction over the California right of publicity claims, (2) Plaintiffs' Amended Complaint contains an Indiana statutory claim against EA that is not subject to California's anti-SLAPP statute, (3) discovery on the Indiana claim will go forward even if the appeal is successful, (4) the appeal is frivolous, and (4) a discretionary stay is not warranted. This Response is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   BACKGROUND

Defendant EA produces the NCAA[1] Football, NCAA Basketball and NCAA March Madness videogame franchises. ¶ 11.[2] Each year, EA spends millions to ensure its games' realism, and advertises this realism in the promotion of its products. Specifically, under a license with the Collegiate Licensing Company ("CLC"), the NCAA's licensing company, EA replicates team logos, uniforms, mascots, fight songs and even member school stadiums with almost photographic realism. *Id.* However, consistent with NCAA rules and student-athlete contracts, the licensing agreements between EA and the CLC explicitly prohibit using NCAA athlete names and/or likenesses in NCAA-branded videogames. *¶* 15. Despite these prohibitions, EA, with the knowledge, participation and approval of the NCAA and CLC, extensively uses actual player names and likenesses, ¶¶ 12, 42, seeking to replicate with exhaustive precision the likenesses of every player listed on a team's roster. ¶ 17.

On May 5, 2009, plaintiff Samuel Michael Keller filed a class-action complaint against EA, NCAA, and CLC, based on the unlawful use of those player likenesses. The complaint alleged that defendants violated class members' rights of publicity under both California law (as to EA) and Indiana law (as to NCAA and CLC); conspired to violate those rights (as to all defendants); breached contractual agreements with class members (as to NCAA); and been unjustly enriched as a result of their unlawful conduct (as to EA and CLC).

---

[1] National Collegiate Athletic Association.

[2] "¶ __" refers to paragraphs of the Complaint (Dkt. No. 1), unless otherwise noted.

PLAINTIFF'S OPP. TO ELECTRONIC ARTS' MOTION
TO STAY PENDING APPEAL – No. 4:09-CV-1967-CW        - 3 -

On July 21, 2009, plaintiff Edward C. O'Bannon filed a separate class action complaint against the NCAA and CLC, alleging that both entities engaged in a price-fixing conspiracy and group boycott/refusal to deal that prevented former NCAA student athletes from receiving compensation in connection with the commercial exploitation of their images.

On July 29, 2009, EA filed a motion to dismiss (Dkt. No. 34) and a motion to strike pursuant to California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16 (Dkt. No. 35). NCAA and CLC also filed separate motions to dismiss (Dkt. No. 48 and Dkt. No. 47, respectively).

On January 15, 2010, the *O'Bannon* and *Keller* claims were consolidated into the current case.

On February 8, 2010, this court denied EA's motion to dismiss and motion to strike; denied CLC's motion to dismiss; and denied in part and granted in part NCAA's motion to dismiss, with leave for plaintiffs to amend their complaint.

EA appealed to the Ninth Circuit, asking it to reverse this Court's dismissal of EA's motion to strike under California's anti-SLAPP statute, and now seeks to stay the proceedings during the pendency of the appeal.[3]

## II.   INTRODUCTION

Contrary to EA's contentions, its notice of appeal does not automatically stay these proceedings. The appellate courts can resolve the anti-SLAPP appeal without resolving the right of publicity claims. This is especially true for Plaintiff's Indiana right to publicity claims that are not subject to the California anti-SLAPP statute. The outcome of the anti-SLAPP appeal is irrelevant to the Indiana statutory claim and discovery related to that claim. There is simply no automatic stay of an Indiana statutory claim pending the resolution of a California statute.

Even if the Court determines that the stay would otherwise be automatic, EA's appeal from the Court's dismissal of its anti-SLAPP motion is frivolous, and thus does not divest the Court of its jurisdiction to move forward with discovery.

---

[3] Electronic Arts Inc.'s Notice of Motion and Motion to Stay Proceedings Pending Appeal (Dkt. No. 156) ("Motion to Stay").

To the extent the Court exercises its discretion to consider a stay, the burden lies on EA to establish the need to stay the case. EA has not met that burden since 1) it is unlikely to succeed on the merits of its appeal; 2) it has failed to establish that it would suffer irreparable injury if the case proceeds during the appeal; 3) Plaintiffs will be injured if a stay is issued; and 4) the public interest lies in denying the motion to stay. Consequently, the Court should deny EA's motion to stay the case pending resolution of its anti-SLAPP appeal.

### III.  ARGUMENT

#### A.  The stay is not automatic as to *Keller's* claims.

EA states that the *Keller* causes of action are automatically stayed pending the Ninth Circuit's decision on EA's appeal from the denial of EA's anti-SLAPP motion. Def.'s Mot. to Strike at 1.[4] EA argues that, "this Court presently lacks jurisdiction over any of the causes of action originally pled against EA in Keller, because those causes of action are now the subject of EA's interlocutory appeal from the denial of EA's anti-SLAPP motion." Mot. at 5.  The Ninth Circuit, in *Hilton v. Hallmark Cards*, 580 F.3d 874, 882 (9th Cir. 2009), rejected this exact argument.

In *Hilton*, the Ninth Circuit considered "…whether California law allows a celebrity to sue a greeting card company for using her image and catch-phrase in a birthday card without her permission. *Id.* at 879.  Defendant Hallmark asked the Court to review the denial of two motions: (1) a motion to strike under California's anti-SLAPP law, and (2) a 12(b)(6) motion to dismiss plaintiff's statutory right of publicity claims.

Before reaching the merits, the Court asked whether it had jurisdiction to review both motions. *Id.* at 880.  The Court ultimately decided that it had jurisdiction to review the denial of the anti-SLAPP, but lacked jurisdiction to review the denial of the motion to dismiss the right of publicity claim.  The Court held that the anti-SLAPP was appealable under the collateral order doctrine, which "entitles a party to appeal not only from [ordinary final judgments]…but also from a

---

[4] "Mot." shall refer unless otherwise noted to EA's Motion to Strike.

narrow class of decisions that do not terminate the litigation, but must, in the interest of achieving a healthy legal system,…nonetheless be treated as final." *Id.* at 880, citing *Digital Equip. Corp. v. Desktop Direct, Inc*. 511 U.S. 863, 867-68 (1994).

The Court also held that denials of motions to dismiss under Rule 12(b)(6) are not ordinarily appealable, even as collateral orders. *Id.* at 880. Review of a non-appealable order, however, is permitted when the order is "inextricably intertwined" with a properly appealable order. *Id.*, citing *Batzel*, 333 F.3d at 1023. For example, a pendent order may be inextricably intertwined if resolution of the issue properly raised on interlocutory appeal necessarily resolves the pendent issue. *Id.* But the converse is also true. If an appealable order can be resolved without resolving the pendent order, then the latter order is not inextricably intertwined with the former, thus divesting the appellate court of jurisdiction of the pendent order. *Hilton*, 580 F.3d at 882.

The Ninth Circuit applied this rule, and found that it could resolve the anti-SLAPP without resolving the pendent right of publicity order under Rule 12(b)(6). The court reasoned "…that neither the denial nor the grant of an anti-SLAPP motion 'necessarily resolves'…a motion to dismiss regarding the same claim." *Id.* at 882. "That is, it is possible for an appellate court to hold that an anti-SLAPP special motion to strike should be granted or denied without dictating the result of a motion to dismiss the same claim under Rule 12(b)(6)." *Id.* Thus, the Ninth Circuit held that it lacked jurisdiction over the pendent order denying the motion to dismiss plaintiff's right of publicity claims.

> a. *Hilton is analogous to the present case and therefore the Ninth Circuit does not have jurisdiction over Plaintiff's pendent right of publicity claim.*

Like the *Hilton* defendant, EA seeks to review the denial of its motion to strike based on California's anti-SLAPP statute. This, according to EA, means that the Ninth Circuit has jurisdiction over all other issues. Mot. at 5. As the Ninth Circuit decision in *Hilton* proves, this is not the law.

PLAINTIFF'S OPP. TO ELECTRONIC ARTS' MOTION
TO STAY PENDING APPEAL – No. 4:09-CV-1967-CW         - 6 -

In order for the appellate courts to have jurisdiction, the right of publicity order must be inextricably intertwined with the anti-SLAPP appeal. To meet that burden, EA must show that the resolution of the issue properly raised on interlocutory appeal necessarily resolves the pendent issue. EA has not met that burden. EA simply assumes that the issues are intertwined. But when the Ninth Circuit considered the exact issue in *Hilton*, it found that the pendent right of publicity claim – the same claim alleged by Plaintiff – was not inextricably intertwined with the anti-SLAPP appeal. Yet, this is the same issue EA has appealed. *Id.* at 882. Because resolution of the anti-SLAPP does not necessarily resolve the motion to dismiss, the Ninth Circuit does not have jurisdiction over the claim. For the same reasons, this Court has jurisdiction over Plaintiff's right of publicity claims based on California law and can proceed with that portion of the case at its discretion.

> **B. Even if we assume that the California right of publicity claim is inextricably intertwined with the anti-SLAPP appeal, Plaintiff's Indiana right of publicity claim is clearly not intertwined.**

Plaintiff's original complaint and the Master Amended Complaint[5] contain claims under Indiana's right of publicity statutes.[6] The Master Amended Complaint names EA as a defendant under the Indiana statutes. The claims are not subject to California anti-SLAPP law, and no party ever sought to strike the cause of action from the original complaint.[7] Because California law has no application to an Indiana statutory right, especially in a federal court exercising diversity jurisdiction, the Indiana claims are not inextricably intertwined with the anti-SLAPP appeal. The success or failure of the anti-SLAPP appeal has no bearing on the Indiana claims. Accordingly, the motion to stay should be denied.

---

[5] The Master Amended Complaint will be filed, pursuant to this Court's order, on March 10, 2010.

[6] In Plaintiff's original complaint, only the NCAA was a direct defendant under the Indiana statutes. Under the Master Amended Complaint, EA is the only direct defendant under the Indiana right of publicity statutes. Both complaint, however, allege that all Defendants engaged in a conspiracy to violate the statutes.

[7] Only the NCAA was a direct defendant under the Indiana statutes in the original complaint.

**C. Even if the Court determines that the stay would be otherwise be automatic, EA's appeal is frivolous, and thus does not divest the Court of its jurisdiction to move forward.**

EA relies on *Chuman* to support its argument that this Court has lost jurisdiction over Plaintiff Keller's claims against EA. *Chuman v. Wright*, 960 F.2d 104 citing *Apostol v. Gallion,* 870 F.2d 1335, 1339 (7th Cir. 1989). There, the Ninth Circuit held that "a proper appeal from a denial of qualified immunity automatically divests the district court of jurisdiction to require the appealing defendants to appear for trial," but EA conveniently deemphasizes the final part of the rule on which *Chuman* relies, which says that "a *frivolous* . . . appeal does *not* automatically divest the district court of jurisdiction. *Id.* at 105.

Accordingly, the Ninth Circuit held in *Chuman*, a district court may maintain its jurisdiction, even over the subject matter of the appeal, by "certify[ing] in writing that the appeal is frivolous or waived." *Id.* Plaintiff Keller urges the Court to make such a certification, as EA's appeal clearly qualifies as frivolous. California's anti-SLAPP statute was intended to prevent "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Code Civ. Proc. § 425.16(a). This lawsuit does not seek to chill EA's free speech rights, but to enforce, among other things, Plaintiffs' right of publicity under Indiana and California law, as well as Defendants' contractual commitments not to use player likenesses. EA's frivolous appeal abuses the purpose of the anti-SLAPP provision in order to delay litigation in this case, but this "[c]ourt [is] not helpless in the face of manipulation," *Apostol*, 870 F.2d at 1339, and should maintain its jurisdiction in the face of this frivolous appeal.

EA appeals the Court's dismissal of its motion to strike on the same basis that it made the motion itself: a claim that EA's video games are protected by the First Amendment as "transformative" works that are exempt from liability. But whatever First Amendment rights EA claims it had to use player likenesses, it waived when it signed licensing agreements prohibiting it from using those likenesses. Complaint ¶¶ 13-15. *See Erie Telecomms. v. Erie*, 853 F.2d 1084, 1096 (3d Cir. 1988) ("constitutional rights, like rights and privileges of lesser importance, may be contractually waived").

PLAINTIFF'S OPP. TO ELECTRONIC ARTS' MOTION
TO STAY PENDING APPEAL – No. 4:09-CV-1967-CW        - 8 -

In its Reply in Support of Its Special Motion to Strike Pursuant to Cal. Code Civ. Proc. § 425.16, Dkt. No. 88, at 2, EA tried to recast this issue as an attempt by Plaintiff to present a "flawed this-is-just-a-contract-case theory." Against this straw man, EA argued that Plaintiff had not asserted a contract claim against EA, and that even if it had, it would be "irrelevant," since "anti-SLAPP applies to claims that the defendant breached a contract just as they [sic] apply to claims for defamation or, as here, misappropriation of likeness." This argument misses the point. Plaintiffs do not argue that all contract claims are immune from anti-SLAPP motions, but here EA's contractual agreement with the NCAA not to use player likenesses serves as a waiver of any First Amendment rights that EA may have had with respect to any allegedly "transformative" uses, and also ensuring that the matter is a private dispute, not one of public interest. Having already waived them, EA cannot now turn to the First Amendment to "recapture [its] surrendered rights," *see Paragould Cablevision, Inc. v. Paragould*, 930 F.2d 1310, 1314 (8th Cir. 1991), and its appeal to the Ninth Circuit impermissible and misplaced.

### D. The Court should exercise its discretion to deny EA's motion to stay and proceed with discovery.

This Court enjoys "broad discretion to stay proceedings as an incident to its power to control its own docket," *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997), and "[t]he proponent of a stay bears the burden of establishing its need." *Id.* at 708 (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). This is so "if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 255, and "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.*

To meet its burden, EA must prove that a stay of the proceedings is merited on the basis of the following considerations: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 129 S.Ct. 1749, 1761 (2009) (citations

1  omitted). Because it fails to meet that burden, the Court should deny EA's motion and proceed with

2  the case during the pendency of EA's interlocutory appeal.

3            **1) EA is unlikely to succeed on the merits of its appeal.**

4        As this Court noted in its order dismissing EA's anti-SLAPP motion,[8] "[a]t the second step of

5  the anti-SLAPP inquiry, the required probability that [a party] will prevail need not be high." *Hilton*,

6  580 F.3d 874, 888-889 (9th Cir. 2009). Moreover, the "statute does not bar a plaintiff from litigating

7  an action that arises out of the defendant's free speech or petitioning; it subjects to potential

8  dismissal *only those actions in which the plaintiff cannot state and substantiate a legally sufficient*

9  *claim*." *Id*. at 888 (quoting *Navellier v. Sletten*, 29 Cal. 4th 82, 93 (2002)) (quotation marks omitted)

10 (emphasis added). This Court's well-reasoned analysis makes it highly likely plaintiff has met this

11 relatively low hurdle, and thus highly *un*likely that EA will prevail on the merits of its appeal.

12       EA claims that the Court's reasoning "invites reversal," and bemoans the fact that the Court

13 held EA's games "too realistic to qualify as transformative," but "too fanciful to qualify as protected

14 publications on a matter of public interest." Mot. at 12. But the Court correctly analyzed the issue of

15 the transformative nature of EA's video games separately from the issue of whether the games

16 qualified for a "public interest" defense, and reasonably found against EA on both. EA refers to a

17 "dead zone" that the Court supposedly created by its opinion, but this analogy is no more than a

18 clever (and misleading) way of describing a "zone" of works that simply do not qualify for First

19 Amendment protection. The Court's finding that EA's video games fall into that zone of unprotected

20 works does nothing to "imperil a burgeoning creative industry," *Id.*, but simply applies First

21 Amendment doctrine, correctly, to find that EA's games fall to one side of the line between protected

22 and unprotected work.

23       EA criticizes the Court's decision for failing to address cases "which held that the public has

24 the right to make fair use of a celebrity image, even in a work that is entirely realistic." Mot. at 12.

25 EA cites a Sixth Circuit case, *ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915 (6th Cir. 2003). In

26 *ETW*, the court analyzed a claim by golfer Tiger Woods that the defendant had violated his right of

27

28       [8] Order on Defendants' Motions to Dismiss and Electronic Arts' Anti-SLAPP Motion to Strike, Dkt. No. 150.

PLAINTIFF'S OPP. TO ELECTRONIC ARTS' MOTION
TO STAY PENDING APPEAL – No. 4:09-CV-1967-CW    - 10 -

1　publicity under Ohio law by misappropriating his likeness. The court found against Woods after
2　noting that the work at issue, done by a well-known artist, "consist[ed] of *much more than a mere*
3　*literal likeness of Woods*," since it depicted a collectible, snapshot "panorama of Woods's victory at
4　the 1997 Masters Tournament," which "was a historic event in the world of sports." *ETW*, 332 F.3d
5　at 936. Far from supporting EA's position, the *ETW* decision supports Plaintiffs' position that the
6　"mere literal likeness[es]" of the student-athletes in EA's video games are not sufficiently
7　transformative to warrant First Amendment protection.

8　　　EA continues to heavily emphasize cases holding that "video games are expressive works
9　protected by the First Amendment," Mot. at 11, but neither the Court nor Plaintiff argue otherwise,
10　and the point is ultimately irrelevant to the success of EA's argument, and thus to the success of its
11　appeal. The fact that courts have held that video games *as a medium* merit consideration for First
12　Amendment protection does not, as EA would have it, protect *all video games* from legitimate claims
13　of misappropriated likeness, any more than the fact that *some* books are protected by the First
14　Amendment gives a book author complete immunity from claims related to the book's content.

15　　　As the Court correctly pointed out in its order,[9] EA's First Amendment defenses required the
16　Court to apply "a balancing test between the First Amendment and the right of publicity." *Hilton*,
17　580 F.3d at 889 (quoting *Winter v. DC Comics*, 30 Cal. 4th 881, 885 (2003)) (internal quotation
18　marks omitted). The Court correctly balanced the interests involved and found that 1) EA's video
19　games are not transformative, and 2) protections afforded for works of entertainment in the public
20　interest are "[not] absolute and [do not] always trump the right of publicity."[10] That analysis, along
21　with the Court's finding that plaintiff's case met the anti-SLAPP statute's standard as to its
22　probability of prevailing, make it unlikely that EA will succeed in convincing the Ninth Circuit to
23　reverse the Court's dismissal of EA's anti-SLAPP motion.

---

[9] Dkt. No. 150, at 7.
[10] Dkt. No. 150, at 12.

**2) EA will not be irreparably injured if the Court denies its motion to stay and proceeds with discovery.**

EA's argues that by denying its motion to stay, the Court will be "subjecting EA prematurely to the speech-chilling burden and expense" of litigating the additional claims.[11] This argument is predicated on the assumption that all of the claims "stand or fall on their shared assumption that student-athletes 'possess a right of publicity' or some other property right in their own images that takes precedence over EA's right to produce works that are transformative and thus protected by the First Amendment." Mot, at 13 (quoting Complaint, ¶ 16). In light of plaintiffs' intention to amend their complaint, however, that assumption proves to be false.

### i. Regardless of the outcome of the appeal, EA will be required to produce discovery on the Indiana right of publicity claim.

Plaintiffs' amended complaint will include a cause of action against EA for violation of Indiana's right of publicity statutes. Because this claim is not subject to California's anti-SLAPP statute,[12] EA cannot claim that the outcome of an appeal based on anti-SLAPP will dictate the Court's course of action on the Indiana claim. Under the Indiana claim, plaintiffs are entitled to full merits discovery, and a decision by the Ninth Circuit in favor of EA's appeal will not abolish that entitlement.

Plaintiffs' right of discovery under the Indiana statute is not a mere technicality. The inquiry into whether EA's video games are "transformative" under the First Amendment is not a legal inquiry, but a question of fact. *See Hilton*, 580 F.3d at 890 ("we note that Comedy III envisioned the application of the [transformative use] defense as a question of fact. . . . Thus, Hallmark is only entitled to the defense as a matter of law if no trier of fact could reasonably conclude that the card was not transformative."). Thus, even if EA succeeds in convincing the Ninth Circuit to rule in EA's favor on the anti-SLAPP appeal, plaintiffs could still prevail on a motion for summary judgment on the Indiana claim after the benefit of full merits discovery. The fact that plaintiffs are entitled to full

---

[11] EA technically only makes these arguments as to O'Bannon's claims, since it believes those to be the only claims over which the Court maintains its discretion to stay. As explained above, however, the stay is not automatic as to the other claims, and the Court has the discretion to deny EA's request for a stay as to *all* of the claims in the case.

[12] It would be a clear violation of the Supreme Court's *Erie* doctrine to apply California's anti-SLAPP statute to Plaintiffs' Indiana claims. *See Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938).

1  discovery regardless of the outcome of the appeal renders void EA's argument that it will be

2  injured—much less "irreparably" injured—by being required to produce such discovery before the

3  Ninth Circuit decides the appeal.

4    EA's motion to stay places heavy emphasis on the idea that claims "based upon a conspiracy

5  to violate Plaintiffs' publicity rights will fail necessarily if there was no violation of Plaintiffs'

6  publicity rights in the first place." Mot, at 13. That contention is irrelevant, however, given the fact

7  that, as argued above, the Ninth Circuit's decision on the anti-SLAPP appeal does not conclusively

8  decide whether EA is liable under Indiana's right of publicity statute. Thus, although plaintiffs'

9  conspiracy claims might fail if there was no underlying violation, whether such an underlying

10  violation exists can only be decided after full discovery and briefing on the Indiana claim.

11

12    **ii. Regardless of the outcome of the appeal, EA will be required to produce discovery as a third party to the claims against the NCAA and CLC.**

13

14    A similar argument applies to the intended claims against NCAA and CLC to which EA is a

15  critical third party. The amended complaint will contain a claim against NCAA for breach of

16  contract, and a claim against CLC for unjust enrichment. Both of these claims involve EA's

17  interactions with the other two defendants, and will require EA to produce discovery very similar—if

18  not identical—to the discovery it would be required to produce under the Indiana right of publicity

19  claim. Thus, even if the Court is convinced that the outcome of the appeal will dictate its actions with

20  respect to all of the direct claims against EA, proceeding with discovery will do nothing but delay the

21  inevitable production of information from EA as a third party. Under these circumstances, where full

22  discovery will be required from EA on multiple claims regardless of the outcome of the appeal, EA

23  cannot claim to be irreparably injured by the Court's denial of a stay.

24    **3) Plaintiff will be injured if a stay is issued.**

25    The inherent harm in an unnecessary delay of litigation is such that "[o]nly in rare

26  circumstances will a litigant in one cause be compelled to stand aside while a litigant in another

27  settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. This is not one of

28  those circumstances, and staying this case will harm Plaintiffs by unnecessarily delaying the

litigation and allowing Defendants to continue to be unjustly enriched by their misappropriation of player likenesses. *See Bensalem v. American Fidelity Fire Ins. Co.*, 644 F.2d 990, 994 (3d Cir. Pa. 1981) (acknowledging the "harm that is often inherent in delay," although finding that such harm did not exist in that particular case). Further, Plaintiffs would be injured if they are prohibited from pursuing their Indiana statutory rights because of a pending appeal under California that has nothing to do with their Indiana claims.

### 4) Public interest lies in allowing the case to go forward

EA claims that Plaintiffs seek to "shrink the sports-related public domain by privatizing and creating a *previously non-existent market* for the likenesses of these public figures," Mot., at 16, and that consequently granting a stay pending the outcome of EA's appeal will serve the public interest. The speciousness of this claim is readily apparent, however, considering that EA already pays millions of dollars each year for the likenesses of public figures whose *only distinguishing characteristic* from Plaintiffs is the fact that they are *already* handsomely paid for their work as professional athletes. The market for likenesses of athletes most certainly already exists; Defendants are simply profiting unjustly from the exclusion of the *student*-athletes *themselves* from the market in their own likenesses.

Additionally, EA accurately cites *Landis* for the proposition that "the public has a strong interest in seeing that litigation is efficiently managed to ensure 'economy of time and effort for [the courts], for counsel, and for litigants.'" Mot, at 16 (quoting *Landis*, 299 U.S. at 254-55). But as explained above, the efficient management of this case requires the Court to *deny*, not grant, EA's motion to stay, since the only thing a stay would accomplish is an unnecessary delay of the discovery that eventually will be required from all Defendants regardless of the outcome of the appeal.

## IV. CONCLUSION

For the foregoing reasons, the Court should exercise its discretion to deny EA's frivolous motion to stay the proceedings pending its appeal of the Court's denial of its anti-SLAPP motion.

Dated: March 5, 2010

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By     /s/ Robert B. Carey
         ROBERT B. CAREY
Leonard W. Aragon
2425 East Camelback Road, Suite 650
Phoenix, Arizona 85016
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
rcarey@hbsslaw.com
leonard@hbsslaw.com

Stuart M. Paynter (226147)
THE PAYNTER LAW FIRM PLLC
1200 G Street N.W., Suite 800
Washington, D.C. 20005
Telephone: (202)  626-4486
Facsimile: (866) 734-0622
stuart@smplegal.com

Steve Berman (*Pro Hac Vice)*
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292-
Facsimile: (206) 623-0594
steve@hbsslaw.com

Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

I, Leonard W. Aragon, am the ECF User whose ID and password are being used to file this OPPOSITION TO DEFENDANT NCAA'S MOTION TO DISMISS.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

                                                  /s/ Leonard W. Aragon
                                                  LEONARD W. ARAGON