KEKER & VAN NEST LLP
ROBERT A. VAN NEST - #84065
rvannest@kvn.com
R. JAMES SLAUGHTER - #192813
rslaughter@kvn.com
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

LATHAM & WATKINS LLP
DANIEL M. WALL - #102580
dan.wall@lw.com
TIMOTHY L. O'MARA - #212731
tim.omara@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

Attorneys for Defendant
ELECTRONIC ARTS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE NCAA STUDENT-ATHLETE NAME & LIKENESS LICENSING LITIGATION | Case No. CV-09-1967-VRW <br><br> *(Consolidated w/Case Nos. C-09-03329-CW; C-09-04128-CW; C-09-04882-CW; C-09-05100-CW; C-09-05134-CW; C-09-05372-CW; and C-09-05378-CW)* <br><br> **SUPPLEMENTAL BRIEFING ON DEFENDANT ELECTRONIC ARTS INC.'S MOTION TO STAY** <br><br> Hon. Vaughn R. Walker <br><br> Date Comp. Filed:     May 5, 2009 |

SUPPLEMENTAL BRIEFING ON DEFENDANT ELECTRONIC ARTS INC.'S MOTION TO STAY
CASE NO. CV-09-1967-VRW

## I.   INTRODUCTION

It is hornbook law that: "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and *divests the district court of its control over those aspects of the case involved in the appeal.*" *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (emphasis added).  There is no dispute that the state-law causes of action asserted by Keller in his original complaint are now before the Ninth Circuit as a result of EA's appeal of the district court's denial of its anti-SLAPP motion.  Consequently, those claims are automatically stayed.  *See* EA's Motion to Stay at 5-10; EA's Motion to Stay Reply at 2-4.

Keller has attempted to side-step the automatic stay by filing—after EA's timely appeal—an amended complaint that purports to add a new cause of action for violation of Indiana's right of publicity statute against EA.  At the July 6, 2010 case management conference, this Court asked the parties to brief whether that Indiana cause of action is subject to the automatic stay.  The answer is "yes" for three reasons:

- First, the Indiana cause of action was added to the complaint *after* EA filed its notice of appeal.  Because EA's appeal divested the district court of jurisdiction concerning Keller's publicity right claims (and ancillary state-law claims) against EA, the district court had no authority to accept Keller's amendment to add a new Indiana cause of action against EA.  Unless this Court regains jurisdiction following EA's appeal, the proposed cause of action is not effective against EA and, importantly, it cannot be used to defeat the impact of the current automatic stay pending appeal.

- Second, even if this Court currently has authority to accept Plaintiffs' proposed amendments, those amendments are subject to the automatic stay under Ninth Circuit law, because they would require the Court to adjudicate precisely the same First Amendment rights that are at issue in EA's anti-SLAPP appeal.  To avoid simultaneous adjudication of these issues by the district court and appellate court, the Indiana claim is subject to the automatic stay as a matter of law.

- Third, if the Indiana cause of action is not stayed, EA will file an anti-SLAPP motion to strike it and, in the event this motion is denied, would exercise its right to immediately appeal that decision.  The plain language of the anti-SLAPP statute allows its application to non-California claims, and California state courts do hear and grant such motions challenging non-California claims.

For these reasons, and those stated in full detail in EA's original stay briefing, EA's stay motion should be granted.

1

503628.08

## II.   BACKGROUND

On May 5, 2009, plaintiff Samuel Keller filed a class-action complaint against EA, the NCAA, and CLC alleging the misappropriation and misuse of NCAA student-athletes' likenesses in EA's college sports video games.  On July 21, 2009, Edward O'Bannon filed a separate class-action complaint against the NCAA and CLC—but not EA.  O'Bannon alleged that the NCAA and CLC violated the Sherman Act by conspiring to force student-athletes to sign NCAA forms and follow NCAA eligibility restrictions that deny them compensation for the use of their likenesses in connection with a wide variety of products.

On July 29, 2009, EA filed an anti-SLAPP motion to strike and a motion to dismiss targeting all of Keller's causes of action against EA.  On September 1, 2009, O'Bannon and Keller moved to consolidate the two actions, fully aware that (a) EA had filed an anti-SLAPP motion against Keller's claims, and (b) EA would be entitled to the anti-SLAPP statute's procedural protections—including the right to an immediate appeal of a denial of that motion.  During the December 17, 2009 hearing on EA's motion to strike, EA's counsel reiterated that EA possessed the right to an automatic appeal if it lost the motion, and that such an appeal would involve a stay of the action.  *See* December 17, 2009 Tr. at 69:12-15.  On January 15, 2010, the Court granted Keller and O'Bannon's consolidation motion.

The Court denied EA's anti-SLAPP motion on February 8, 2010.  On February 18, 2010, EA filed a notice of appeal from the Court's denial of EA's anti-SLAPP motion.  The same day, EA filed a motion in the district court to stay both the *Keller* and *O'Bannon* claims due to its pending appeal.  EA explained in the motion that Keller's claims against it were automatically stayed because the district court lacked jurisdiction over the issues on appeal—including EA's First Amendment immunity from suit.  *See* EA's Mot. to Stay at 5-10.  EA sought the district court's recognition of the mandatory stay because Plaintiffs would not stipulate that the *Keller* action could not proceed during EA's appeal.  Additionally, EA explained that a discretionary stay of O'Bannon's claims against EA was called for under the *Nken v. Holder* factors, and would decidedly serve the interests of judicial and litigant efficiency.  *See Id.* at 10-17; EA Mot.

SUPPLEMENTAL BRIEFING ON DEFENDANT ELECTRONIC ARTS INC.'S MOTION TO STAY
CASE NO. CV-09-1967-VRW

503628.08

1    to Stay Reply at 7-8.  By staying the *O'Bannon* claims against EA, the district court would

2    prevent the unnecessary litigation of claims that will be barred if EA prevails before the Ninth

3    Circuit.  *Id.*

4              On March 10, 2010, almost a month *after* EA's notice of appeal and filing of its motion

5    to stay, Keller and O'Bannon filed a Consolidated Amendment Complaint ("CAC").  The CAC

6    not only consolidated the previously filed California state-law and antitrust claims, but also

7    sought to assert a new cause of action against EA under Indiana's right of publicity statute and

8    added EA as a defendant to the O'Bannon antitrust claims.  The new Indiana cause of action

9    against EA relied on the same facts as Keller's publicity right causes of action under California

10   law and is subject to the same First Amendment defenses previously raised in EA's anti-SLAPP

11   motion to strike.  The day after filing the CAC, Keller filed an opposition to EA's motion to stay

12   arguing in part that the newly added Indiana cause of action against EA was not subject to a stay

13   resulting from EA's anti-SLAPP appeal.  O'Bannon also opposed EA's request for a

14   discretionary stay of the antitrust claims on similar grounds.  EA replied on March 25, 2010, and

15   the Court heard argument regarding the motions during its July 6, 2010 case management

16   conference.

## III.    ARGUMENT

**A.    Plaintiffs' Indiana Publicity Right Claim Is Automatically Stayed Pending EA's Anti-SLAPP Appeal.**

**1.    The District Court Has Been Divested of Jurisdiction to Accept Amendments to Keller's Claims Against EA.**

21             As EA explained in its Motion to Stay, "[t]he filing of a notice of appeal is an event of

22   jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district

23   court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident*

24   *Consumer Discount Co.*, 459 U.S. 56, 58 (1982).  As a matter of law, once jurisdiction is

25   conferred upon the appellate court (and during the pendency of the appeal), a district court has

26   no authority to accept an amendment to add a new claim to the action. *See Davis v. U.S.*, 667

27   F.2d 822, 824 (9th Cir. 1982) (holding that appeal of an action's dismissal divested district court

28

SUPPLEMENTAL BRIEFING ON DEFENDANT ELECTRONIC ARTS INC.'S MOTION TO STAY
CASE NO. CV-09-1967-VRW

503628.08

1  of jurisdiction to accept amendment alleging new claims); *Fegan v. Warden*, No. 1:08-cv-01373,

2  2009 WL 1260397, at *2 (E.D. Cal. May 7, 2009) (holding that request to amend complaint filed

3  after notice of appeal must be renewed after appellate court returns matter to the district court).

4        Such is the case here.  EA's anti-SLAPP motion targeted all of Keller's claims against it.

5  *See* EA's Mot. to Stay at 5-6.  EA's appeal encompasses the same claims, thereby divesting the

6  district court of jurisdiction over all aspects of Keller's action against EA.  Consequently, until

7  EA's appeal is resolved, the district court currently lacks jurisdiction over Keller's claims against

8  EA and has no discretion to accept or proceed with an amendment to add a cause of action under

9  Indiana's right of publicity statute.  *See id.* at 5-10; EA's Mot. to Stay Reply at 2-4.[1]

10      **2.**      **Even if the Court Could Accept Keller's Amendments, the Newly Added**
                **Indiana Publicity Right Cause of Action Falls Within the Scope of the**
11                  **Automatic Stay.**

12        The existence of the *O'Bannon* complaint and its consolidation with the *Keller* complaint

13  undoubtedly have made the procedural posture here more complicated.  But the result does not

14  change:  EA's appeal of the district court's order denying its anti-SLAPP motion divested the

15  district court of jurisdiction over all aspects of Keller's publicity rights claims against EA.

16  "[A]fter appeal a trial court may, if the purposes of justice require, preserve the status quo until

17  decision by the appellate court... *But it may not finally adjudicate substantial rights directly*

18  *involved in the appeal*."  *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46,*

19  *Int'l Typographical Union*, 686 F.2d 731, 734-35 (9th Cir. 1982) (quoting *Newton v. Consol.*

20  *Gas Co.*, 258 U.S. 165, 177 (1922)) (modifications in original; emphasis added).  The Ninth

21  Circuit's decision in *Pyrodyne Corp. v. Pyrotronics Corp.*, 847 F.2d 1398, 1403 (9th Cir. 1998),

22  is illustrative.  In *Pyrodyne*, plaintiff—faced with defendant's counterclaim asserting

23  incontestable registration of a mark—moved for a preliminary injunction regarding its right to

24  use a trade name based on the infringement defenses of laches and estoppel.  *Id.* at 1400.  The

25  district court denied the motion and plaintiff appealed.  While the appeal was pending, defendant

26  ───────────────────

[1]    This outcome does not deny Keller the opportunity to assert the Indiana cause of action.
27  Rather, it simply means he cannot add this factually-identical claim during the pendency of EA's
appeal.  Following resolution of EA's appeal, the parties can take whatever action they deem
28  appropriate with respect to the pleadings.

SUPPLEMENTAL BRIEFING ON DEFENDANT ELECTRONIC ARTS INC.'S MOTION TO STAY
CASE NO. CV-09-1967-VRW

503628.08

1  filed its own motion for preliminary injunction seeking to enjoin plaintiff from further

2  infringement of its trademark. The Ninth Circuit explained that "[t]he district court properly

3  concluded that it was *without jurisdiction* to rule on [defendant's] motion while the issue of the

4  scope of [plaintiff's] defenses was pending in this court." *Id.* at 1403 (emphasis added).

5        The fact that EA's anti-SLAPP motion did not target the Indiana cause of action is

6  irrelevant to the Court's stay analysis—the automatic stay from EA's anti-SLAPP appeal extends

7  to all "*aspects* of the case involved in the appeal," not just specific causes of action. *Griggs*, 495

8  U.S. at 58 (emphasis added). Where, as here, a non-frivolous interlocutory appeal concerns

9  defendant's immunity from suit, "the district court is automatically divested of jurisdiction to

10  proceed with trial pending appeal." *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir 1992); *cf.*

11  *Batzel v. Smith*, 333 F.3d 1018, 1025-26 (9th Cir. 2003) (applying "immunity" rationale for anti-

12  SLAPP interlocutory appeal);[2] *see also* EA Mot. to Stay at 5-8; EA Mot. to Stay Reply at 2-4.

13  As in *Pyrodine*, the scope of EA's First Amendment defenses is pending both on appeal and—*if*

14  *the Indiana cause of action is not stayed*—before this Court. The Indiana cause of action relies

15  on the same facts as the California causes of action, and it is brought under Indiana's publicity

16  right statute that involves the same substantive rights as those under California's publicity rights

17  statute. To consider EA's First Amendment defenses to the Indiana cause of action, this Court

18  would be placed in the position of having to adjudicate the same substantive rights of EA that are

19  now pending on appeal before the Ninth Circuit—a position that the Ninth Circuit has held the

20  district court may not assume as a matter of law. *See Chuman*, 960 F.2d at 105; *Pyrodyne*, 847

21  F.2d at 1403; *McClatchy*, 686 F.2d at 734-35.

22  **B.**     **If the Indiana Publicity Right Claim is Not Stayed, It Will Be Subject to an Anti-SLAPP Motion to Strike.**

23

24        The Indiana right of publicity cause of action against EA is subject to California's anti-

25  SLAPP statute, as the statute applies to claims brought under both California's and other states'

26  laws. Had Keller asserted an Indiana publicity right cause of action against EA in his original

---

27      [2]     In *Batzel*, all district court activity came to a dead stop during the pendency of the anti-

28  SLAPP interlocutory appeal. *See* EA's Mot. to Stay at 8-9.

SUPPLEMENTAL BRIEFING ON DEFENDANT ELECTRONIC ARTS INC.'S MOTION TO STAY
CASE NO. CV-09-1967-VRW

503628.08

1  complaint, it would have been subject to EA's anti-SLAPP motion and would now be part of

2  EA's appeal.[3] If Keller is permitted to proceed now with the Indiana cause of action during the

3  pendency of EA's appeal, EA will file a motion to strike it under California's anti-SLAPP

4  statute. If the Court denies the motion, EA will immediately appeal, thereby automatically

5  staying the action.

6       In their opposition to EA's stay motion, Plaintiffs assert—without any supporting

7  authority—that "California law has no application to an Indiana statutory right." Stay

8  Opposition at 7. That assertion is simply wrong. Such a narrow interpretation of the California

9  statute is directly contradicted by (a) the broad, inclusive language of the statute, and (b) *the*

10 *California Supreme Court's express instruction that the statute may not be judicially narrowed.*

11      The express language of California's anti-SLAPP statute applies to non-California state

12 law claims. Contrary to Plaintiff's assertion, the statute does not distinguish between California

13 and other state-law claims. The statute states:

14      *A cause of action* against a person arising from any act of that person in
         furtherance of the person's right of petition or free speech under the United States
15      Constitution or the California Constitution in connection with a public issue shall
         be subject to a special motion to strike, unless the court determines that the
16      plaintiff has established that there is a probability that the plaintiff will prevail on
         the claim.

17

18 Cal. Civ. Pro. Code § 425.16(b)(1) (2010) (emphasis added). The inclusiveness of the statute's

19 language is clear. Leaving no doubt, the California Supreme Court has held: "Nothing in

20 [California's anti-SLAPP] statute categorically excludes any particular type of action from its

21 operation, and no court has the power rewrite the statute so as to make it to conform to a

22 presumed intention which is not expressed. … [T]o adopt such a narrowing construction,

23

24 _____

[3]     The right to bring an anti-SLAPP motion does not differ between California state-court
25 actions and federal diversity actions. *See, e.g., United States ex. rel. Newsham v. Lockheed
     Missiles & Space Co.*, 190 F.3d 963, 972-73 (9th Cir. 1999) (holding that § 425.16(b) applies in
     federal diversity actions); *see also Hilton v. Hallmark Cards*, 599 F.3d 894, 900 n.2 (9th Cir.
26 2010) ("we have long held that the anti-SLAPP statute applies to state law claims that federal
     courts hear pursuant to their diversity jurisdiction."); *In re Bah*, 321 B.R. 41, 46 (9th Cir. B.A.P.
27 2005) ("No reason exists to deny Appellants a state law remedy which they could have asserted
     against Debtor's state law claims in state court. Under *Lockheed*, therefore, application of the
     anti-SLAPP statute to pendant state law claims is appropriate.").

28

SUPPLEMENTAL BRIEFING ON DEFENDANT ELECTRONIC ARTS INC.'S MOTION TO STAY
CASE NO. CV-09-1967-VRW

503628.08

1   moreover, would contravene the Legislature's express command that section 425.16 shall be

2   construed broadly." *Navellier v. Sletten*, 29 Cal. 4th 82, 92 (2002) (internal quotations omitted).

3   The statute does not distinguish between actions from particular jurisdictions, but instead focuses

4   on the conduct those actions target—"any act of that person in furtherance of the person's right

5   of petition or free speech." *Id.* at 88.

6          Moreover, the scope of California's anti-SLAPP statute has been repeatedly confirmed by

7   California state courts, which hear—and grant—anti-SLAPP motions challenging non-California

8   causes of action.  For example, in *Landau v. Gibson Hoffman & Pancione*, the court upheld the

9   granting of a California anti-SLAPP motion challenging Washington-state law claims.  No.

10  B211392, 2009 WL 5103467, at *6 (Cal. Ct. App. Dec. 29, 2009) (unpublished) ("[The plaintiff]

11  did not state a legally sufficient claim under Washington law and he did not demonstrate a

12  probability of prevailing on the merits.  The trial court did not err in granting [defendants'] anti-

13  SLAPP motion to strike under section 425.16.").  *See also Mega Int'l Commercial Bank Co. v.*

14  *She-Ying Ching Wang*, No. B2103182009 WL 1509171, at *5 (Cal. Ct. App. June 1, 2009)

15  (unpublished) (granting an anti-SLAPP motion challenging a cross-complaint involving

16  Taiwanese law); *Brill Media Co. v. TCW Grp., Inc.*, 132 Cal. App. 4th 324, 338 & 340-42 (2005)

17  (overruled on other grounds) (implicitly holding that the anti-SLAPP statute could apply to

18  Virginia statutory claims by applying §425.17 to defendant's anti-SLAPP motion).[4]

19         These holdings are not remotely remarkable given the California Legislature's express

20  intent of broadly drafting the statute to comprehensively protect Californians from strategic

21  litigation targeting expressive activity ("SLAPP" suits).  *See id.* at § 425.16(a).  "Because these

22  meritless lawsuits seek to deplete the defendant's energy and drain his or her resources, the

23

24  [4]    California courts apply choice-of-law rules on an issue-by-issue basis. *See, e.g.,*
    *Washington Mut. Bank v. Sup. Ct.*, 24 Cal. 4th 906, 920 (2001); *S.A. Empresa De Viacao Aerea*
25  *Rio Grandense v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981); *Dalkilic v. Titan Corp.*, 516 F.
    Supp. 2d 1177, 1187 n.4 (S.D. Cal. 2007).  Thus, regardless of what state's substantive law
26  would apply for each proposed class member (an issue EA expressly saves for another day),
    under California law that applies choice-of-law rules on an issue-by-issue basis, the California
27  anti-SLAPP statute protects EA in this California-based action. *See Global Relief Found. v. New*
    *York Times Co.*, No. 01-C-8821, 2002 WL 31045394, at *11 (N.D. Ill. Sept. 11, 2002) (applying
28  California's anti-SLAPP statute to an Illinois state-law claim).

503628.08

1    Legislature sought to prevent SLAPPs by ending them early and without great cost to the SLAPP

2    target." *Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th 180, 192 (2005) (internal quotations and

3    citations omitted).  If a plaintiff could escape the anti-SLAPP statute's intentionally broad reach

4    merely by adding a non-California tag-along claim (as Keller would hope to do here),

5    California's important public policy choice to facilitate the quick and efficient dismissal of suits

6    targeting expressive activity would be frustrated in its entirety.

7    **C.     A Discretionary Stay of the *O'Bannon* Claims Against EA Will Serve Judicial and
     Litigant Efficiency Without Delaying the Progress of the Remainder of the**
8    ***O'Bannon* Action.**

9          A district court "has broad discretion to stay proceedings as an incident to its power to

10   control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997).  Plaintiffs'

11   characterization of the *O'Bannon* claims at the July 6, 2010 CMC amply demonstrates why the

12   Court should exercise its discretion to stay the O'Bannon claims against EA:

13         The *O'Bannon* antitrust plaintiffs challenge *ten different revenue streams* that the
           NCAA and CLC use to exploit the likenesses of former college athletes, ten
14         different ones. ... Now, *of those ten, only one involves video games, and EA is
           just one player in the video game industry.  So, the idea that the O'Bannon case
15         has to be stopped in its tracks because there's something about an EA issue that's
           on appeal is vastly overstated.*
16

17   July 6, 2010 Tr. 25:6-15 (emphasis added).  By Plaintiffs' own express admission, the *O'Bannon*

18   claims against EA constitute one small piece of Plaintiffs' antitrust action.  In fact, EA's only

19   link to the  O'Bannon claims relates to its videogame license with the NCAA. *See* CAC ¶¶ 372,

20   173.  A licensee, such as EA, is not needed for Plaintiffs' to develop their core theory regarding

21   the NCAA's and CLC's use of allegedly anticompetitive bylaws and student-waiver forms. *See*

22   CAC ¶¶ 283-305, 372.  To the contrary, EA is no more essential to the orderly progression of the

23   *O'Bannon* action than the *dozens* of other licensees or partners, not named as defendants, that

24   allegedly provide the NCAA and CLC with the nine other revenue streams called out by

25   Plaintiffs' counsel.[5]  Consequently, a stay of the *O'Bannon* claims against EA poses little risk of

26

27   _____
     [5]      Of all the NCAA's numerous licensees and partners implicated in the alleged antitrust
28   violations, only EA is named as a defendant.

SUPPLEMENTAL BRIEFING ON DEFENDANT ELECTRONIC ARTS INC.'S MOTION TO STAY
CASE NO. CV-09-1967-VRW

503628.08

1  delaying the litigation's overall progress, but will save significant resources if (as EA believes)

2  its anti-SLAPP appeal will result ultimately in the dismissal of both the *Keller* and *O'Bannon*

3  claims against EA.  *See* EA's Mot. to Stay at 12-15; EA's Mot. to Stay Reply at 7-8.

## IV.   CONCLUSION

5      For the reasons stated here and in EA's original papers, the Court should grant EA's

6  motion and stay all proceedings and discovery against EA in this consolidated action pending

7  resolution of EA's Ninth Circuit appeal from the Court's denial of EA's anti-SLAPP motion.

8

9  Dated:  August 5, 2010                                         LATHAM & WATKINS LLP
                                                                           Daniel M. Wall
10                                                                         Timothy L. O'Mara

11
                                                                           KEKER & VAN NEST LLP
12

13

14                                                                By: /s/ R. James Slaughter
                                                                           R. JAMES SLAUGHTER
15                                                                         Attorneys for Defendant
                                                                           ELECTRONIC ARTS INC.
16

17

18

19

20

21

22

23

24

25

26

27

28

SUPPLEMENTAL BRIEFING ON DEFENDANT ELECTRONIC ARTS INC.'S MOTION TO STAY
CASE NO. CV-09-1967-VRW

503628.08