Robert B. Carey
Leonard W. Aragon
HAGENS BERMAN SOBOL SHAPIRO LLP
2425 East Camelback Road, Suite 650
Phoenix, Arizona 85016
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
rcarey@hbsslaw.com
leonard@hbsslaw.com

Stuart M. Paynter (226147)
THE PAYNTER LAW FIRM PLLC
1200 G Street N.W., Suite 800
Washington, DC 20005
Telephone: (202) 626-4486
Facsimile: (866) 734-0622
stuart@smplegal.com

Attorneys for Plaintiffs

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re NCAA Student-Athlete Name & Likeness Licensing Litigation | Case No. 4:09-cv-1967 VW<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT ELECTRONIC ARTS INC.'S SUPPLEMENTAL BRIEF ON ITS MOTION TO STAY**<br><br><br>ACTION FILED:  May 5, 2009 |

# STATEMENT OF ISSUES

1. Does Indiana's own anti-SLAPP statute apply to an Indiana statutory claim filed in federal court against an Indiana defendant based on misconduct that occurred in Indiana? *See infra* at 2-7.

2. Does Indiana's anti-SLAPP statute decline to provide for immediate appellate review of a denial of an anti-SLAPP motion to strike? *See infra* at 4.

3. Does Electronic Arts' appeal of the anti-SLAPP motion's denial not trigger an "automatic" stay because the Ninth Circuit's jurisdiction is limited solely to review of the denial of the anti-SLAPP motion and does not extend to any other aspect of this case? *See infra* at 8-9.

4. Does Electronic Arts' appeal of the anti-SLAPP motion's denial not trigger an "automatic" stay because the appeal is clearly frivolous because Electronic Arts waived any First Amendment rights it had when it contractually agreed not to use player names and likenesses? *See infra* at 9-10.

5. Did the Court have jurisdiction to accept Plaintiffs' amendment because it had already authorized the amendment before Electronic Arts filed its appeal? *See infra* at 11.

6. Did the Court have jurisdiction to accept Plaintiffs' amendment on behalf of plaintiffs whose claims are extraneous to the appeal? *See infra* at 11.

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES ........................................................................................................... i
I.      INTRODUCTION ........................................................................................................... 1
II.     ARGUMENT .................................................................................................................. 2
   A. California's Anti-SLAPP Statute Does Not Apply to an Indiana Claim Brought in Federal Court ............................................................................................................................. 2
      1. Indiana law governs Plaintiffs' Indiana statutory claim based on conduct that occurred in Indiana .................................................................................................. 2
      2. Applying California's choice-of-law rules, Indiana law still governs Plaintiffs' Indiana claim .......................................................................................................... 3
      3. EA's authorities are inapplicable........................................................................... 5
      4. Even if a California state court might apply California's anti-SLAPP statute to an Indiana claim, a federal court sitting in diversity is not required to follow suit.................. 6
   B. No Automatic Stay Exists ................................................................................................ 8
      1. The Ninth Circuit's jurisdiction is limited to review of the denial of EA's anti-SLAPP motion .................................................................................................................... 8
      2. EA's appeal is frivolous and cannot trigger an automatic stay ............................. 9
      3. This Court had jurisdiction to accept Plaintiffs' amendment .............................. 11
III.    CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Brill Media Co. LLC v. TCW Group, Inc.*,
    132 Cal. App. 4th 324 (2005) .................................................................................................. 6

*Bulletin Displays LLC v. Regency Outdoor Adver.*,
    448 F. Supp. 2d 1172 (C.D. Cal. 2006) ................................................................................ 6, 7

*Castaneda v. United States*,
    2008 U.S. Dist. LEXIS 40567 (C.D. Cal. May 20, 2008) .................................................. 9, 12

*Chemstar, Inc. v. Liberty Mut. Ins. Co.*,
    41 F.3d 429 (9th Cir. 1994) ..................................................................................................... 6

*Chuman v. Wright*,
    960 F.2d 104 (9th Cir. 1992) ................................................................................................... 9

*Davis v. United States*,
    667 F.2d 822 (9th Cir. 1982) ................................................................................................. 11

*Deutsch v. Turner Corp.*,
    324 F.3d 692 (9th Cir. 2003) ................................................................................................... 4

*Erie Railroad Co. v. Tompkins*,
    304 U.S. 64 (1938) ................................................................................................................... 2

*Fegan v. Warden*,
    2009 U.S. Dist. LEXIS 41559 (E.D. Cal. May 6, 2009) ........................................................ 11

*Global Relief Found. v. New York Times Co.*,
    2002 U.S. Dist. LEXIS 17081 (N.D. Ill. Sept. 9, 2002) .......................................................... 3

*Hanna v. Plumer*,
    380 U.S. 460 (1965) ................................................................................................................. 7

*Hilton v. Hallmark Cards*,
    580 F.3d 874 (9th Cir. 2009) ............................................................................................... 8, 9

*Kearney v. Salomon Smith Barney, Inc.*,
    39 Cal. 4th 95 (2006) ........................................................................................................... 4, 5

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941) ................................................................................................................. 4

*Landau v. Gipson Hoffman & Pancione*,
    No. B211392, 2009 Cal. App Unpub. LEXIS 10295 (Cal. App. 2d Dist. Dec. 29, 2009) ........ 6

*Mega Int'l Commer. Bank Co. v. She-Ying Ching Wang*,
   No. B210318, 2009 Cal. App Unpub. LEXIS 4417 (Cal. App. 2d Dist. June 1, 2009)............ 6

*Navallier v. Sletten*,
   29 Cal. 4th 82 (2002) ................................................................................................................ 5

*Ragan v. Merchants Transfer & Warehouse Co.*,
   337 U.S. 530 (1949) .................................................................................................................. 3

*Schering Corp. v. First DataBank Inc.*,
   2007 U.S. Dist. LEXIS 45813 (N.D. Cal. June 18, 2007) ...................................................... 12

*Washington Mut. Bank v. Superior Ct.*,
   24 Cal. 4th 906 (2001) .............................................................................................................. 4

### STATUTES

CAL. CIV. PROC. CODE § 425.16(i) (2010) ..................................................................................... 4

CAL. CIV. PROC. CODE § 425.17 (2010) ......................................................................................... 6

BURNS IND. CODE ANN. §§ 34-7-7-1, *et seq.* (2010) .................................................................. 4, 7

**I.    INTRODUCTION**

This Court permitted Electronic Arts ("EA") to file a short supplemental brief on whether California's anti-SLAPP statute applies to an Indiana statutory claim brought in federal court under diversity jurisdiction. Instead of filing such a brief, EA primarily re-argues issues already rejected by this Court and then, as an afterthought, barely addresses the issue raised by the Court. EA avoids a direct response for good reason: application of California's choice-of-law principles demonstrates that the California anti-SLAPP statute does not apply to the Indiana claim. Contrary to EA's assumptions, California has no interest in applying its anti-SLAPP statute to an Indiana claim and Indiana has never applied California's anti-SLAPP statute to an Indiana claim. Indeed, Indiana has its own anti-SLAPP statute that applies to such claims, and there is no automatic right to appeal under the statute. For these reasons, EA cannot cite a single case applying California's anti-SLAPP statute to similar circumstances, and therefore EA's argument that California's anti-SLAPP statute applies to an Indiana statutory claim brought in federal court fails. *See infra* at 2-7.

To the extent the Court re-considers the previous arguments, EA's asserts the same points: that this Court had "no authority to accept Keller's amendment to add a new Indiana cause of action," and even if it did, the Indiana claim would be "subject to the automatic stay" because it seeks "to adjudicate precisely the same First Amendment rights that are at issue in [EA's] appeal." EA Supp. Br. at 1.[1] Both these arguments fail for the same reason: no automatic stay exists. Under relevant Ninth Circuit law, the court of appeals only has jurisdiction to review the anti-SLAPP denial and all other matters are left to the trial court, to include discovery and pretrial motions. Further, this Court granted leave to amend long before EA filed its notice of appeal and therefore any "automatic" stay of Plaintiffs' California-based claims would not affect the Indiana statutory claim contained in the Amended Complaint. *See infra* at 8-9.

EA's appeal, moreover, is frivolous because EA contractually waived any First Amendment right to use player names and likenesses, and therefore EA's assertion of the anti-SLAPP statute is unrelated to any constitutional right to speech. A frivolous appeal cannot support any stay of this

---

[1] "EA Supp. Br." refers to August 5, 2010 Supplemental Briefing on Defendant Electronic Arts' Motion to Stay.

PLAINTIFFS' RESP. TO ELECTRONIC 'S
SUPPLEMENTAL BRIEF ON ITS MOTION TO STAY –   - 1 -
No. 4:09-CV-1967-VW  010123-11  390301 V1

action. *See infra* at 9-10. Finally, EA's argument applies only to *Keller*, not to the other publicity-rights plaintiffs, because EA's anti-SLAPP motion was directed solely at the *Keller* case and only Keller is party to the appeal.[2] *See infra* at 11-12.

EA's argument that California's anti-SLAPP statute applies in federal court to an Indiana statutory claim is not supported by California law, and this Court should, as tentatively announced, deny the motion to stay.

## II. ARGUMENT

### A. California's Anti-SLAPP Statute Does Not Apply to an Indiana Claim Brought in Federal Court

EA threatens that "[i]f Keller is permitted to proceed with the Indiana cause of action during the pendency of EA's appeal, EA will file a motion to strike it under California's anti-SLAPP statute [and] if the Court denies the motion, EA will immediately appeal, thereby automatically staying the action." EA Supp. Br. at 6. Surely EA can and will file such a motion, but that doesn't mean the motion (or the appeal) has merit. EA's threat ignores that California's anti-SLAPP statute simply does not apply to claims under Indiana law brought in federal court, and empty threats do not change the applicable law.

#### 1. Indiana law governs Plaintiffs' Indiana statutory claim based on conduct that occurred in Indiana

As a federal court sitting in diversity jurisdiction, this Court follows the doctrine of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938), and applies state substantive law to this case. *Erie* is premised on the theory that in diversity cases the rights enjoyed under local law should not vary because enforcement of those rights was sought in federal court rather than in state Court. *See, e.g.,*

---

[2] Despite the limited nature of the supplemental brief ordered by the Court, EA also argues that a discretionary stay as to the *O'Bannon* antitrust claims should be granted. EA Supp. Br. at 8-9. That portion of its brief makes no meaningful new arguments as to why the Court should not follow through on its expressed inclination to deny a stay with respect to the *O'Bannon* action. Tr. at 25, 29. EA does seize on a statement made by *O'Bannon*'s counsel at the July 6, 2010 hearing to support the proposition that his claims against EA are merely one small part of the antitrust action. EA Supp. Br. at 8. This is an incomplete citation. Counsel in *O'Bannon* went on to say at the hearing that videogame revenue is only one of ten NCAA revenue streams being challenged in *O'Bannon* so the notion that the case ought to grind to a halt pending EA's appeal of right of publicity issues was "vastly overstated." Tr. at 25. As counsel in *O'Bannon* also noted, discovery against EA should be allowed because it will bear on the liability and damages not only of EA but also of the NCAA and CLC.

PLAINTIFFS' RESP. TO ELECTRONIC 'S
SUPPLEMENTAL BRIEF ON ITS MOTION TO STAY – - 2 -
No. 4:09-CV-1967-VW  010123-11  390301 V1

1  *Ragan v. Merchants Transfer & Warehouse Co.,* 337 U.S. 530, 532 (1949).  Since the cause of action
2  was created by local law, "… the measure of it is to be found only in local law."  337 U.S. at 533.
3  "It carries the same burden and is subject to the same defenses in federal court as in the state court."
4  *Id.*  Accordingly, *Keller*'s Indiana right-of-publicity claim is governed by Indiana law, to include
5  Indiana's anti-SLAPP statute, not California law.  To hold otherwise would grant additional
6  substantive rights to EA simply because this case was filed in federal court.
7      EA may argue that California's anti-SLAPP statute would apply even if this case was brought
8  in Indiana state court, but there is no case law supporting EA's position.  *Keller*'s Indiana right-of-
9  publicity claim is based on conduct that occurred within Indiana.  EA violated the statute by, among
10 other things, transporting and selling its videogames in Indiana and by participating in a conspiracy
11 with an Indiana corporation.  Plaintiff's claim is not merely a "tag-along" to his California right-of-
12 publicity claim.  The Indiana claim is a separate and distinct cause of action arising out of Indiana
13 law and based on conduct occurring in Indiana.  Indeed, it would have been equally appropriate to
14 have filed the claim in an Indiana federal court as it was to file in a California federal court.  For
15 these reasons, EA cannot demonstrate why an Indiana court would apply California's anti-SLAPP
16 statute, rather than its own, to an Indiana statutory claim.  Because EA has not met its burden, the
17 stay should be denied.

    **2.**    **Applying California's choice-of-law rules, Indiana law still governs Plaintiffs' Indiana claim**

To the extent the Court determines that Plaintiffs' Indiana claim is potentially subject to California's anti-SLAPP statute, it is necessary to conduct a choice-of-law analysis given the existence of Indiana's anti-SLAPP statute.  EA's only "analysis" of the subject is limited to a one-paragraph footnote.  EA Supp. Br. at 7 n.4.  There, EA states that the Northern District of Illinois in *Global Relief Found. v. New York Times Co.,* 2002 U.S. Dist. LEXIS 17081 (N.D. Ill. Sept. 9, 2002), "appl[ied] California's anti-SLAPP statute to an Illinois state-law claim."  In fact, the *Global Relief* court merely "assum[ed] that the Anti-SLAPP statute [could] be applied" but held that even if so, it did not require dismissal.  *Id.* at *35.  EA's brief does not contain a substantive choice-of-law analysis because it is clear that Indiana law governs the Indiana right-of-publicity claim.

In diversity cases, courts apply the choice-of-law rules of the state in which the court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "California applies the 'governmental interest' approach to conflict of law issues." *Deutsch v. Turner Corp.*, 324 F.3d 692, 716 (9th Cir. 2003) (quoting *Hurtado v. Superior Ct.*, 11 Cal. 3d 574, 579-80 (1974)). The governmental-interest approach generally involves three steps:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state and then ultimately applies the law of the state whose interest would be the more impaired if its law were not applied.

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107-08 (2006) (citations omitted). Importantly, California courts have held that "a separate conflict-of-law inquiry must be made with respect to each issue in the case." *Washington Mut. Bank v. Superior Ct.*, 24 Cal. 4th 906, 920 (2001). The Court should therefore analyze the Indiana right-of-publicity claim individually.

Here, there are clear differences with respect to each state's anti-SLAPP statute and how each statute would apply to the Indiana claim. Both California and Indiana have passed anti-SLAPP statutes, but Indiana's differs from California's in critical ways. Most importantly for the purposes of denying EA's motion to stay, Indiana's anti-SLAPP statute does not contain an immediate right to appeal. BURNS IND. CODE ANN. §§ 34-7-7-1, *et seq.* (2010). This creates a "true conflict" with California's anti-SLAPP statute. CAL. CIV. PROC. CODE § 425.16(i) (2010).

Because a "true conflict" exists between the two laws, the question becomes "which state's interest would be more impaired if its policy were subordinated to the policy of the other state." *Kearney*, 39 Cal. 4th at 107-08. Here, Indiana's interests are substantially stronger than California's with respect to Plaintiffs' Indiana publicity-rights claim. The claim arises from injuries and conduct that occurred in Indiana (the distribution, transportation and sale of EA's games in Indiana), and

1 EA's co-conspirator is an Indiana resident. Indiana's legislature, moreover, crafted its own anti-

2 SLAPP statute in which it affirmatively chose not to grant an immediate right to appeal.[3]

3   On the other hand, California's only interest in the Indiana claim is as EA's state of resi-

4 dence. Both anti-SLAPP statutes adequately protect EA's First Amendment rights. The right to an

5 interlocutory appeal, or lack thereof, is merely a determination of how to efficiently adjudicate such

6 claims. As such, applying California's anti-SLAPP statute to Plaintiffs' Indiana claim would sub-

7 stantially impair Indiana's interests in applying its own policies to claims arising under Indiana law.

8 Just as clearly, California's interests would suffer little from applying Indiana law to the Indiana

9 claim. Under California's choice-of-law analysis, the Court thus should not apply California's anti-

10 SLAPP statute to Plaintiffs' Indiana claim.

11   **3. EA's authorities are inapplicable**

12   EA's authorities do not support a contrary result. First, contrary to EA's argument,

13 California's Supreme Court has not applied California's anti-SLAPP statute to claims based on other

14 state's laws. The sole California Supreme Court decision cited by EA, *Navallier v. Sletten*, 29 Cal.

15 4th 82 (2002), never considered whether California's anti-SLAPP statute applies to claims brought

16 under other states' laws. There, the California Supreme Court held that no "particular type of action"

17 was excluded from coverage under the statute, but the context of the case makes clear that the types

18 of actions to which the Court was referring were simply different types of actions *within the state of*

19 *California*. *Id*. at 92. Plaintiffs argued that "a 'garden variety breach of contract and fraud claim'

20 [was] not covered by [anti-SLAPP]." *Id.* at 90. Rejecting this argument, the Court merely clarified

21 that California common-law contractual or fraud claims were not exempt from coverage under the

22 anti-SLAPP statute. The decision did not, explicitly or implicitly, consider applying the statute to

23 out-of-state claims.

---

[3] Under California's choice-of-law analysis, a "court does not 'weigh' the conflicting governmental interests in the sense of determining which conflicting law manifested the 'better' or the 'worthier' social policy on the specific issue…. [E]mphasis is placed on the appropriate *scope* of conflicting state policies rather than on the 'quality' of those policies." *Kearney*, 39 Cal. 4th at 112 (emphasis added; brackets in original). The question thus is not whether there *should* be a right of immediate appeal to an order granting or denying an anti-SLAPP motion; it is merely whether Indiana's policy choice on that issue properly extends in scope to the Indiana claim in this case. It clearly does.

PLAINTIFFS' RESP. TO ELECTRONIC 'S
SUPPLEMENTAL BRIEF ON ITS MOTION TO STAY –  - 5 -
No. 4:09-CV-1967-VW  010123-11 390301 V1

EA also cites to a handful of appellate decisions, but they are all either unpublished (and thus lacking any precedential value), completely irrelevant, or both.[4] Nor are any of these opinions binding on this Court sitting in diversity. *See Chemstar, Inc. v. Liberty Mut. Ins. Co.*, 41 F.3d 429, 432 (9th Cir. 1994) (noting that federal courts sitting in diversity are not bound by California appellate court decisions).

### 4. Even if a California state court might apply California's anti-SLAPP statute to an Indiana claim, a federal court sitting in diversity is not required to follow suit

Even if the California Supreme Court were to apply California's anti-SLAPP statute to a claim under Indiana law, it does not follow that this Court sitting in diversity must also apply California's anti-SLAPP statute to an Indiana claim simply because this particular federal court happens to be located in California.

EA argues that because a California *state* court might apply California's anti-SLAPP statute to an Indiana claim, this Court is obligated to do the same. The court in *Bulletin Displays LLC v. Regency Outdoor Adver.*, 448 F. Supp. 2d 1172 (C.D. Cal. 2006), rejected an analogous argument. There, the court dismissed the idea that just because a California *state* court would allow an anti-

---

[4] The *Landau v. Gipson Hoffman & Pancione*, No. B211392, 2009 Cal. App. Unpub. LEXIS 10295 (Cal. App. 2d Dist. Dec. 29, 2009), and *Mega Int'l Commer. Bank Co. v. She-Ying Ching Wang,* No. B210318, 2009 Cal. App. Unpub. LEXIS 4417 (Cal. App. 2d Dist. June 1, 2009), are unpublished decisions and therefore have no precedential value. They are also inapplicable here. The *Wang* court never reached the anti-SLAPP issue because the appeal was untimely. In *Landau*, part of the basis for the claim of malicious prosecution, even though governed by Washington law, is conduct that occurred in California by a California resident, which had been engaged in the California litigation that lead up to the malicious prosecution claim. Thus, conduct occurring in California led to the claim of malicious prosecution and was the conduct sought to be stifled. But in *Keller*, the Indiana claim arises solely from conduct that occurred in Indiana (the transportation and distribution of NCAA-branded videogames), and there is no conduct occurring in California that is allegedly being stifled here, only Indiana conduct. Also, instead of one claim, there are two separate claims in this case – a California claim and an Indiana claim. The Indiana claim in this case does not require that the Court apply California law in the same way that the California claim in *Landau* required the court to apply Washington law. As such, *Landau* is factually inapposite.

The only published decision cited by EA, *Brill Media Co. LLC v. TCW Group, Inc.*, 132 Cal. App. 4th 324 (2005), has no relevance. In *Brill*, the appellate court reversed the grant of an anti-SLAPP motion against a Virginia law claim on grounds that had nothing to do with whether or not the anti-SLAPP statute applied to the Virginia claim – the court simply found that *all* of the plaintiffs' claims arose "out of commercial speech and conduct" and fell under the statutory exception to anti-SLAPP found at CAL. CIV. PROC. CODE § 425.17 (2010). *Brill*, 132 Cal. App. 4th at 343. Thus, contrary to EA's brief, the *Brill* court did not "implicitly" hold that the anti-SLAPP statute applied to non-California law claims.

1   SLAPP motion against federal claims,[5] it followed that a California *federal* court should do the same.

2   In holding that California's anti-SLAPP statute did not apply to federal claims brought in *federal*

3   court, the *Bulletin Displays* court reasoned that the fortuity of federal court's location where plaintiff

4   filed the federal claim should not govern the statute's applicability:

> To permit a defendant sued on a federal claim in federal court in California to bring an anti-SLAPP motion to strike the federal claim simply because a California statute permits such a motion, *when a defendant sued on the same federal claim in federal court in another state could not do so*, would make the available defenses to the federal claim dependent on the location of the federal court and the substance of the forum state's laws.  [448 F. Supp. 2d at 1181 (emphasis added).]

The same logic applies here because the Indiana claim could just as easily have been brought in a federal court in Indiana, where, as noted above, it would clearly be subject to Indiana's – not California's – anti-SLAPP statute.  To apply California's anti-SLAPP statute to Plaintiffs' Indiana claim would thus result in the same type of inconsistent result that concerned the *Bulletin Displays* court, undermining the "twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws."  *Hanna v. Plumer*, 380 U.S. 460, 468 (1965).

Ultimately, in declining to apply California's anti-SLAPP statute to federal claims, *Bulletin Displays* found dispositive the fact that "California has no interest in dictating rules … applicable to federal claims brought in federal court."  448 F. Supp. 2d at 1181.  That same reasoning applies here. California simply has zero interest in "dictating rules applicable to" Indiana "claims brought in federal court."  *Id.*

On the other hand, the fact that Indiana's legislature has affirmatively created its own anti-SLAPP statute indicates that it has a strong interest in applying its *own* statutory scheme to Indiana claims.  The Indiana statute, unlike its California counterpart, has no immediate right to appeal. BURNS IND. CODE §§ 34-7-7-1, *et seq.* (2010).  Indiana must have intended its anti-SLAPP statute – including the lack of a right to immediate appeal – to apply to Indiana claims.  Applying California's anti-SLAPP statute to Plaintiffs' Indiana claim would clearly undermine the policy choices made by Indiana, choices to which this Court should defer.

---

[5] The federal claims at issue were claims over which state and federal courts had concurrent jurisdiction.  *Id.* at 1180.

B.     **No Automatic Stay Exists**

As noted above, EA spends the bulk of its brief re-arguing that its appeal of this Court's denial of its anti-SLAPP motion somehow "automatically" stayed this entire case. As a threshold matter, there is no automatic stay because the California anti-SLAPP statute does not apply and the Indiana anti-SLAPP statute does not have an automatic right to appeal. Plaintiffs, however, have no choice but to exercise caution and respond to EA's arguments. Fortunately, nothing has changed, the arguments are the same as those already considered and rejected by this Court.

EA argues that this Court had "no authority" to accept the addition of the Indiana cause of action and that even if it did, the Indiana claim would be subject to the same "automatic" stay since it requires the "Court to adjudicate precisely the same First Amendment rights that are at issue in [the] appeal." EA Supp. Br. at 1. Both arguments fail because EA's appeal of the anti-SLAPP motion's denial did not trigger an "automatic" stay for two reasons: (i) the Ninth Circuit's jurisdiction is limited solely to review of the denial of the anti-SLAPP motion and does not extend to any other aspect of this case, and (ii) EA's appeal is clearly frivolous because it waived any First Amendment rights it had when it agreed not to use player names and likenesses. In addition, Plaintiffs note that this Court granted leave to amend to add the Indiana law claim *before* EA filed a notice of appeal. Consequently, even if the prior claims were "automatically" stayed, this Court still retained jurisdiction over the amendments it had already authorized.

1.     **The Ninth Circuit's jurisdiction is limited to review of the denial of EA's anti-SLAPP motion**

As Plaintiffs pointed out in their initial response, the Ninth Circuit has expressly rejected the idea that in exercising jurisdiction over the appeal of the denial of an anti-SLAPP motion, it necessarily exercises jurisdiction over all other aspects of a case. *See Hilton v. Hallmark Cards*, 580 F.3d 874, 882 (9th Cir. 2009). Specifically, in *Hilton*, the district court, like this Court, simultaneously denied both an anti-SLAPP motion and a motion to dismiss on First Amendment grounds. *Id.* In its decision affirming the denial of the anti-SLAPP motion, the Ninth Circuit expressly held that its jurisdiction was limited solely to the denial of the anti-SLAPP motion. *Id.* The Ninth Circuit reasoned that it had no jurisdiction over the denial of the motion to dismiss

1    because the denial of that motion was not "inextricably intertwined" with the denial of the anti-
2    SLAPP motion. *Id.* It follows inexorably from this holding that no stay automatically blankets an
3    entire action simply because a denial of an anti-SLAPP motion is appealed.

4    In its reply brief, EA argued that *Hilton* is inapplicable because in it the Ninth Circuit
5    "merely made the unremarkable observation that it lacked appellate jurisdiction to review the
6    defendant's motion to dismiss [and] … did not discuss whether there ought to be a stay pending
7    appeal of the causes of action targeted by the anti-SLAPP motion." EA Reply at 2-3.[6] EA's attempt
8    to disaggregate the question of "appellate jurisdiction" from the question of whether a blanket
9    "automatic" stay exists is incoherent. The only reason an "automatic" stay of the entire case would
10   exist is if the filing of the notice of appeal divested this Court of jurisdiction over the entire case. EA
11   acknowledges this obvious relationship between the scope of appellate jurisdiction and the scope of
12   this Court's jurisdiction in the very first sentence of its supplemental brief:

> The filing of a notice of appeal is an event of jurisdictional significance [that] confers jurisdiction on the court of appeals and divests the district court of its control *over those aspects of the case involved in the appeal*.

EA Suppl. Br. at 1 (emphasis added) (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). EA's claim that "this motion is about a stay pending appeal, not about appellate jurisdiction," EA Reply at 3, thus makes no sense. To the extent EA claims an automatic stay exists (as opposed to requesting a discretionary stay), the two issues cannot be separated. It is precisely because the Ninth Circuit's jurisdiction is limited solely to a review of the denial of the anti-SLAPP motion that no blanket "automatic" stay exists. *See Castaneda v. United States*, 2008 U.S. Dist. LEXIS 40567, at *5 (C.D. Cal. May 20, 2008).

### 2. EA's appeal is frivolous and cannot trigger an automatic stay

Even if this Court were to ignore (as EA does in its supplemental brief) the Ninth Circuit's controlling decision in *Hilton*, EA is still not entitled to an "automatic" stay because its appeal is frivolous. The filing of a frivolous appeal does not trigger an automatic stay. *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992) (citing *Apostol v. Gallion,* 870 F.2d 1335, 1339 (7th Cir. 1989)).

---

[6] "EA Reply" refers to March 25, 2010 Reply in Support of Motion to Stay.

1       This rule applies here because the premise of EA's anti-SLAPP motion – whether applied to
2  Indiana law, California law or the law of any other state – is that it has a First Amendment right to
3  use actual player names and likenesses in its games. That premise is patently false because, as
4  alleged in the original complaint, EA contractually agreed not to utilize player names and likenesses.
5  *Keller* Compl. ¶ 15. EA has never contested that the relevant agreements do, in fact, prohibit it from
6  using NCAA athlete's names and likenesses. EA's position instead is that the relevant contractual
7  provisions do not meet the Supreme Court's requirement that a waiver of a constitutional right be
8  "clear." EA Reply at 5-6.[7] That argument simply adds an additional layer of frivolousness to an
9  already frivolous argument. EA is a sophisticated multi-billion dollar corporation. Assuming
10 (contrary to the law) that EA has a First Amendment right to use actual player names and likenesses,
11 it is difficult to imagine a clearer waiver of that right than a voluntarily agreed to contractual
12 provision that explicitly and in plain English prohibits EA from using player names and likenesses.
13      Highlighting the frivolousness of EA's First Amendment argument is that EA pays the NFL
14 Players Association tens of millions of dollars each year in order to use the names and likenesses of
15 NFL players. Consol. Am. Compl. ¶ 227. If EA believed it had a First Amendment right to use
16 actual player names and likenesses free of charge, it would not pay the NFLPA tens of millions of
17 dollars each year to use the names and likenesses of NFL players. Similarly, if EA has a First
18 Amendment right to freely utilize player names and likenesses because its games are
19 "transformative" works of art, it would logically also have a First Amendment right to use NCAA
20 member schools names and logos in its games free of charge. Yet, EA pays substantial sums to the
21 NCAA to license the names and logos for use in its games, again highlighting that EA knows it does
22 not have a First Amendment right to student-athletes' names and likenesses in its games. EA's
23 frivolous appeal supports denying EA's motion to stay.

---

[7] Specifically, EA argues that Plaintiffs do not allege a contract "in which EA clearly and expressly waived its First Amendment rights – nor does any such contract exist." EA Reply at 6. Plaintiffs read this language as not contesting Plaintiffs' characterization of the contractual terms, but arguing that they do not constitute a clear waiver of First Amendment rights. To the extent EA is now contesting whether its contracts with the CLC permit it to use player names and likenesses, it has put those contracts at issue and the Court should order them to be produced and made public.

### 3. This Court had jurisdiction to accept Plaintiffs' amendment

In its Order on Defendants' Motions to Dismiss and Electronic Arts' Anti-SLAPP Motion to Strike (Docket #150), this Court expressly granted Plaintiffs "leave to amend to allege that NCAA used his likeness or conspired with others to violate his right of publicity under Indiana law." Order at 5. That order issued on February 8, 2010, long before EA filed its notice of appeal. *Id.* Consequently, even if the prior claims, which were subject to EA's anti-SLAPP motion, were "automatically" stayed, this Court retains jurisdiction over the amendments it already authorized.

Plaintiffs, moreover, did not amend the complaint to avoid an "automatic" stay. The relevant amendments to the complaint specifically addressed the Court's concern that there was no conspiracy between EA and the NCAA under Indiana law because Plaintiffs did not allege that EA violated the statute. Plaintiffs clarified the allegations in the amended complaint to show that EA violated the Indiana statute by, among other things, using student athletes' likenesses in its videogames. The amendments therefore clarified the complaint based on a concern raised by the Court, nothing more.

Furthermore, the two cases cited by EA actually support Plaintiffs' position. In *Davis v. United States*, 667 F.2d 822 (9th Cir. 1982), the Ninth Circuit held that where a motion requesting to leave to amend a complaint came after a notice of appeal, "[t]he district court had no jurisdiction over the action *at the time it considered the motion.*" *Id.* at 824 (emphasis added). Likewise, in *Fegan v. Warden*, No. 1:08-cv-01373-TAG-HC, 2009 U.S. Dist. LEXIS 41559 (E.D. Cal. May 6, 2009), the district court denied a motion requesting leave to amend a petition where the request was made *after* the petitioner had already filed notice of appeal. In contrast, this Court granted leave to amend in the same order that EA appealed, at a time when the Court clearly had jurisdiction over the entirety of the action and power to allow an amendment. Consequently, there is no merit to EA's argument that this Court was not authorized to accept the Plaintiffs' amendment.

Moreover, even if this Court somehow lacked jurisdiction to accept Keller's amendment, it still had jurisdiction to accept the addition of an Indiana law claim on behalf of the remaining publicity-rights Plaintiffs Bryon Bishop, Lamarr Watkins and Bryan Cummings. *See generally*, Consol. Am. Compl. ¶ 3. EA never filed an anti-SLAPP motion against the claims brought by these Plaintiffs and the Ninth Circuit has no jurisdiction over their claims. Consequently, they are not

subject to any "automatic" stay and this Court has jurisdiction to permit Plaintiff Bishop to amend his complaint to add an Indiana law claim, and for Plaintiffs Cummings and Watkins to file their initial claims against EA as part of the Consolidated Amended Complaint.

Lastly, even if the interlocutory appeal divested the Court from considering matters that are the subject of the appeal, the Court is not divested of jurisdiction to "rule on pretrial and case-management issues, including discovery." *Schering Corp. v. First DataBank Inc.,* 2007 U.S. Dist. LEXIS 45813, at *11 (N.D. Cal. June 18, 2007).  In *Schering*, the Court recognized that the "anti-SLAPP statute protects certain speakers' 'right not to be dragged through the courts,'" but found "that any harm [the Defendant] would suffer by complying with pretrial procedures would be negligible or at least must be evaluated matter by matter." *Id.* at *13.  The Court went on to say that "it would be wrong to rule on a blanket basis that any and all discovery, for example, should be denied pending what may be a lengthy appeal." *Id.*  Accordingly, the Court held that "jurisdiction still exists to decide discovery issues, rule on pretrial motions, and set dates leading up to trial. *Id*. at *5; *see also Castaneda*, 2008 U.S. Dist. LEXIS 40567, at *5 (denying request for stay).  In the event a stay is granted, the Court should retain jurisdiction over discovery issues, pretrial motions, and other issues not related to the substance of the appeal.

### III.   CONCLUSION

Indiana law governs Plaintiffs' Indiana right-of-publicity claim.  To the extent there is a conflict between California and Indiana law, Indiana law applies under the choice-of-law analysis.  For these reasons, Electronic Arts' motion to stay should be denied.  But if a stay is granted, the Court should retain jurisdiction over discovery issues, pretrial motions, and other issues not related to the substance of the appeal.

| | | |
|---|---|---|
| 1 | Dated: August 19, 2010 | Respectfully submitted, |
| 2 | | HAGENS BERMAN SOBOL SHAPIRO LLP |
| 3 | | By /s/ Robert B. Carey |
| 4 | | ROBERT B. CAREY |

Leonard W. Aragon
2425 East Camelback Road, Suite 650
Phoenix, Arizona 85016
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
rcarey@hbsslaw.com
leonard@hbsslaw.com

Michael D. Hausfeld
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, D.C. 20006
Tel: (202) 540-7200
Fax: (202) 540-7201
mhausfeld@hausfeldllp.com

Steve Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292-
Facsimile: (206) 623-0594
steve@hbsslaw.com

I, Leonard W. Aragon, am the ECF User whose ID and password are being used to file this RESPONSE TO DEFENDANT ELECTRONIC ARTS INC.'S SUPPLEMENTAL BRIEF ON ITS MOTION TO STAY.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

               /s/ Leonard W. Aragon
               LEONARD W. ARAGON