Michael P. Lehmann (Cal. Bar No. 77152)
Jon T. King (Cal. Bar No. 205073)
Arthur N. Bailey, Jr. (Cal. Bar No. 248460)
HAUSFELD LLP
44 Montgomery Street, 34th Floor
San Francisco, CA 94104
Tel:  (415) 633-1908
Fax:  (415) 358-4980
Email:   mlehmann@hausfeldllp.com
         jking@hausfeldllp.com
         abailey@hausfeldllp.com

*Plaintiffs' Interim Co-Lead Class Counsel
with Primary Responsibility for Antitrust
and Related Claims*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE NCAA STUDENT-ATHLETE NAME & LIKENESS LICENSING LITIGATION** | Case No. 4:09-cv-1967 VRW<br><br>**PLAINTIFF EDWARD O'BANNON, JR.'S AND ALL OTHER ANTITRUST PLAINTIFFS' OPPOSITION TO MOTION TO DECONSOLIDATE PUBLICITY RIGHTS CLAIMS AND AMEND ORDER APPOINTING INTERIM LEAD COUNSEL**<br><br>Date:      November 18, 2010<br>Time:      3:30 p.m.<br>Judge:     Hon. Vaughn R. Walker<br>Courtroom: 6, 17th Floor<br><br>ACTION FILED: May 5, 2009 |

ANTITRUST PLAINTIFFS' OPPOSITION TO MOTION TO DECONSOLIDATE PUBLICITY RIGHTS CLAIMS AND AMEND
ORDER APPOINTING INTERIM LEAD COUNSEL                                          CASE No. 4:09-CV-1967-CW

- 1 -

1   The Antitrust Plaintiffs[1], represented by Hausfeld LLP ("Hausfeld"), the Court-appointed

2   Plaintiffs' Interim Co-Lead Class Counsel that is tasked with "primary responsibility" for the

3   antitrust and related claims in this consolidated litigation, as well as with "remain[ing] responsible

4   for the litigation of *all* claims" and with being "responsible for the overall conduct of the litigation

5   on behalf of [*all*] class plaintiffs" (Doc. #146) (emphases added), submit this opposition to certain

6   other plaintiffs' "Motion to Deconsolidate Publicity Rights Claims and Amend Order Appointing

7   Interim Lead Counsel" ("Motion").

### I.     Introduction.

The Antitrust Plaintiffs are prepared to immediately move forward with discovery as soon as authorized by the Court, because the time has come to develop and test the merits of the case. Numerous claims have already been challenged and sustained in full, including the antitrust claims against defendants NCAA and CLC and a civil conspiracy claim against defendants NCAA, CLC, and Electronic Arts Inc. ("EA"), and the cases have been related and consolidated for efficient prosecution.  Despite this state of procedural readiness, Hausfeld's Interim Co-Lead Counsel, Hagens Berman Sobol Shapiro LLP ("HBSS"), filed the Motion without consulting with Hausfeld and without, in Hausfeld's estimation considering any delaying effects that it may have on the progress of this litigation as a whole.[2]

Hausfeld respectfully disagrees with much of the Motion's substance.  Hausfeld, on behalf of the Antitrust Plaintiffs, disagrees as well with the timing of HBSS' filing in view of: (1) the lack of

---

[1] As used herein, "Plaintiffs" shall mean all plaintiffs in the present litigation, the "Right of Publicity Plaintiffs" shall mean the plaintiffs in the *Keller* action and any similar right of publicity-based actions previously consolidated before this Court, and the "Antitrust Plaintiffs" shall mean the plaintiffs in the *O'Bannon* federal antitrust action and any similar antitrust-based actions previously consolidated before this Court. Specifically, the "Right of Publicity Plaintiffs" are: Samuel Keller, Bryan Cummings, Lamarr Watkins and Byron Bishop. The "Antitrust Plaintiffs" are:  Edward  C. O'Bannon, Jr., Harry Flournoy, Alex Gilbert, Sam Jacobson, Thad Jaracz, David Lattin, Patrick Maynor, Tyrone Prothro, Damien Rhodes, Eric Riley, Bob Tallent, and Danny Wimprine.  Similar nomenclature was used by all plaintiffs and defendants in the two previous Joint Case Management Conference Statements filed on June 29, 2010 (Doc. # 222) and September 29, 2010 (Doc. # 234).  An additional antitrust plaintiff, Ishmael Thrower, has not yet had his putative class action consolidated with the other matters.

[2] Counsel for the Antitrust Plaintiffs further pointed out that they may have been put at a procedural disadvantage by not having input into the Motion, thus allowing Defendants to potentially make use of statements regarding the antitrust claims made by HBSS with which the Antitrust Plaintiffs do not agree.

- 2 -

1   any changed circumstances of note since this litigation's original judge, the Honorable Claudia

2   Wilken, filed her consolidation order on January 15, 2010 ("Order Granting Plaintiffs Samuel

3   Michael Keller's and Edward C. O'Bannon, Jr.'s Joint Motion to Consolidate Actions" (Doc. # 146)

4   (the "Consolidation Order")), and (2) this Court's announced intention to retire from the bench next

5   year.

6       The Antitrust Plaintiffs respectfully suggest that this litigation should be returned to Judge

7   Wilken following the Court's anticipated ruling on the pending motions to stay all claims filed by all

8   defendants. *See* "Order" filed Oct. 7, 2010 (Doc. # 235) ("[t]he court will provide further case

9   management scheduling information in its ruling on defendants' motions to stay."). Judge Wilken

10  previously made numerous substantive, as well as case management, rulings in this matter, and for

11  purposes of judicial efficiency, it makes eminent sense for her to preside over the case after this

12  Court decides the issues raised by Defendants' pending stay motions.[3] The Antitrust Plaintiffs

13  further suggest that it would be optimal for this Court to first deny the pending stay motions (as it has

14  indicated that it intends to do) and order that discovery can immediately commence before

15  transferring the case to Judge Wilken, so that the case does not languish for potentially many more

16  months.

17      It is Judge Wilken's two orders on consolidation and the appointment of plaintiffs' interim

18  co-lead counsel that are at issue in the Motion, as well as her guidance at the consolidation hearing

19  cited in the Motion. Given that she is the logical choice to preside over these matters going forward,

20  and that she would be the judge who most likely would have to deal with the effects of case

21  management decisions, it makes sense that the Court either deny the Motion outright, or hold it in

22  abeyance until such time as the cases are returned to Judge Wilken and she is able to address the

---

[3] *See, e.g., O'Bannon* Doc. # 142 ("Order on NCAA's and CLC's Motions to Dismiss"); Doc. # 150, ("Order on Defendants' Motions to Dismiss and Electronic Arts' Anti-SLAPP Motion to Strike"); *O'Bannon* Doc. # 135 ("Order Denying Defendants' Motion To Transfer Venue"); Doc. # 145 (Consolidation Order); Doc. # 146 ("Order Granting Plaintiffs Samuel Michael Keller's and Edward C. O'Bannon, Jr.'s Joint Motion for Appointment of Interim Co-Lead Counsel Pursuant to Federal Rule of Civil Procedure 23(g)(3)"); *O'Bannon* Doc. # 27, a contested "Related Case Order" relating *Keller* and *O'Bannon*. The references to *O'Bannon* are to the first antitrust complaint brought in this matter, C 09-03329 (VRW), subsequently consolidated by Judge Wilken and assigned to the present docket.

- 3 -

1   issues and set a briefing schedule, should she have any questions regarding her prior case
2   management decisions.
3         Having not had an opportunity to do so prior to the filing of the Motion, the Antitrust
4   Plaintiffs will correct certain statements in the Motion regarding their claims.  The Antitrust
5   Plaintiffs note that both of the plaintiffs' Interim Co-Lead Counsel firms, at their own request, are
6   charged by the Court with the responsibility to "coordinate and make work assignments among
7   themselves . . . ," "[t]o prepare . . . all other necessary pleadings and filings in this matter," and "[t]o
8   coordinate all motions . . . and other pretrial proceedings regarding the position of all the class
9   plaintiffs."  (Doc. # 146, Order, at 3, adopting duties outlined in [Proposed] Order, Doc. # 81-3).
10  While the Antitrust Plaintiffs were aware for some time that the Right of Publicity Plaintiffs *intended*
11  to file a motion to deconsolidate (*see, e.g.*, Joint Case Management Conference Statement filed on
12  June 29, 2010 (Doc. # 222) at page 14), they were not told in advance *what particular arguments*
13  *that motion would make*, including arguments that mischaracterize the way in which the antitrust
14  claims would be prosecuted. Judge Wilken's order appointing Interim Co-Lead Counsel mandated
15  that Hausfeld should have been consulted, or at least apprised of, the specific contents of the Motion
16  before it was filed. Regrettably, that did not happen in this instance.[4]

17  **II.     Argument.**

18      **A.   The Motion's Description of the Litigation's Procedural History is**
19          **Incomplete.**

20        To fully understand the Motion and the present opposition, some initial identification of the
21  various plaintiffs and their counsel may be useful, as the Motion is not entirely clear on this point.
22  The Motion was not in fact filed by "Attorneys for Plaintiffs" in this consolidated litigation, as the
23  signature blocks on the first and last pages indicate.  Defendants also were initially confused as to
24  who is responsible for and supportive of this Motion.  Counsel from multiple defendants called the

---

[4] Other than with respect to the present Motion, Hausfeld believes that both firms have worked effectively on matters of common interest to date, and further worked well individually on particular issues specific to the various sets of claims.  The Antitrust Plaintiffs respectfully suggest that the Interim Co-Lead Counsel Order more closely guide HBSS' efforts going forward.

- 4 -

ANTITRUST PLAINTIFFS' OPPOSITION TO MOTION TO DECONSOLIDATE PUBLICITY RIGHTS CLAIMS AND AMEND
ORDER APPOINTING INTERIM LEAD COUNSEL                                          CASE No. 4:09-CV-1967-CW

1    undersigned, expressing confusion as to whether the Antitrust Plaintiffs were parties to the Motion or

2    supported its contentions.  Defendants also had stated in the recent Joint Case Management

3    Conference Statement that "[a]s a general matter, Defendants question why Plaintiffs wasted judicial

4    resources, as well as the time and resources of both Plaintiffs and Defendants, on their prior motion

5    to consolidate (Doc # 69, 108), only to seek unconsolidation less than a year later." (Doc. # 234, at

6    11). As their opposition to the Motion now makes clear (Doc. # 237, at 1), they understand it to be

7    submitted solely on behalf of the Right of Publicity Plaintiffs.[5]

8         To be perfectly clear, the Antitrust Plaintiffs do *not* join in the Motion, and agree with

9    Defendants' expressed position that it is not efficient or desirable to revisit the issue of consolidation

10   at this time, particularly when the case has not significantly advanced since February 8, 2010, when

11   Judge Wilken issued orders denying in large part numerous motions to dismiss and strike, including

12   denying in total the NCAA and CLC's motions to dismiss the antitrust claims, as well as denying the

13   NCAA's, CLC's, and Electronic Arts' ("EA") motions to dismiss the civil conspiracy claim against

14   them.  The only reference in Judge Wilken's Consolidation Order with respect to altering the

15   consolidation determination is as follows:  "This consolidation is without prejudice to a later

16   determination as to *whether the cases should be tried together*."  Doc. #145, at 4 (emphasis added).

17   The case certainly is not nearing trial, and in fact is in the identical posture as when Judge Wilken

18   made her ruling, with discovery not yet authorized to begin.

19        Moreover, the Motion incompletely characterizes what Judge Wilken has said previously on

20   the subject of consolidation and related topics.  HBSS failed to include the full quote from Judge

21   Wilken at the hearing on consolidation in December of 2009 in its moving papers.  *Compare* Motion

22   at 2 ("[Judge Wilken] explicitly instructed the parties to draft the consolidated amended complaint in

23   such a way to permit the court to 'unconsolidate' it in the future" (citing Dec. 17, 2009 Hearing Tr.,

24   at 68) *with* Dec. 17, 2009 Hearing Tr., at 67 ("Could you file something that could be

---

[5] The Motion does not represent completely the views of all plaintiffs who filed right of publicity claims, however. For example, it asks that after deconsolidation, only HBSS should be put in charge of right of publicity claims. Byron Bishop, who has advanced such claims, now seeks to be appointed as co-lead with respect to such claims if the Court were to order deconsolidation.  *See* Doc. #238-39.

- 5 -

1    unconsolidated? In other words, don't mix them up too much, have the causes of action be

2    somewhat separate so that *if we had to deconsolidate them for trial*, it wouldn't be too difficult to

3    do?"). Also omitted from the Motion is this exchange immediately following Judge Wilken's

4    questions regarding *trial*:

> Mr. Hausfeld: It would not be difficult at all, Your Honor, because the different theories would be in different counts.
>
> The Court: Okay.

(*Id.*).

It bears noting that HBSS and Hausfeld previously agreed that *all* cases should be consolidated, and further agreed upon the specific leadership structure adopted by the Court. *See*, *e.g.,* Doc. # 69, 81. The Court granted plaintiffs' motions with respect to both issues, despite Defendants' opposition to consolidation. Nothing of any note has changed since plaintiffs and their counsel urged the Court to take the actions that it did in granting the motions. Having signed on to the motion to consolidate, and willingly undertaken the duties assigned to them by the Court, counsel for the Antitrust Plaintiffs do not think it proper to reverse course at this juncture.

Shortly after Judge Wilken's rulings, and the filing of the Consolidated Amended Complaint directed by her, the cases were assigned to the present Court via the granting of a motion to relate the actions to *Pecover, et al. v. Electronic Arts, Inc.,* Case No. C 08-02820 VRW (Doc. #200) ("*Pecover*"), a consumer class action also brought by HBSS and relating to the price of video-games as opposed to the image rights at issue in all claims in the present consolidated litigation. Almost no activity has occurred in the litigation since transfer, making the filing of the motion and its stated grounds all the more puzzling.

### B. Corrections to the Motion's References to the Antitrust Claims.

The Antitrust Plaintiffs are compelled to correct some inaccurate characterizations regarding the antitrust claims that are made in the Motion.

HBSS now states that "the *O'Bannon* action alleges a complex antitrust theory of anticompetitive conduct by Defendants, including hundreds of NCAA member institutions, and

- 6 -

numerous third-party co-conspirators . . . " (Motion, at 5).  The Court perhaps has already grasped that there is nothing particularly complex at all about plaintiffs' antitrust theory – former players do not receive any compensation for, and are foreclosed from, the perpetual licensing of their collegiate images following the cessation of their collegiate athletic career.  Specifically, the Court stated the following at the July 6, 2010 Case Management Conference:

> How much – this is a very general question with respect to all of this litigation:  how important is discovery here for sorting out the issues?  True, I can understand if we get into damages, we get into who's bound and all that sort of thing, discovery could be very important.  But, basically, we're dealing with factual issues that can't be disputed, are we not?  We've got contracts.  We've got issues that appear to not be in any serious factual dispute.  Am I correct or am I incorrect?

(Tr., at 22).

HBSS further notes that the antitrust claims will "necessarily involve far reaching discovery regarding market definition and antitrust injury."  Motion at 5.  This is an overstatement at best.  With respect to market definition, HBSS certainly should be aware that Judge Wilken cited defendant CLC's own references to the "collegiate licensing market," in finding that the antitrust plaintiffs successfully plead a relevant market.  *O'Bannon* Doc. #142, at 10.  Indeed, a chapter for a licensing treatise written by CLC expressly details the "collegiate licensing market," as does as written material from such sources as the NCAA and various members specifically recognizing that same market.[6]

---

[6] *See, e.g.,* Aspen Publishers' Licensing Update 2004, § 7.02, titled "Collegiate Licensing," authored by defendant CLC's top executives Pat Battle, Derek Eiler, Bruce Siegal (General Counsel) and others, and specifically recognizing the "collegiate licensing market," e.g., stating that "[a]nother area of development in the collegiate licensing market is the area of moving image licensing."  (p. 174).  Also of note, in referring to Defendant EA's NCAA video-games, for which CLC has brokered licensing deals at issue on the present case, CLC correctly states in the treatise that "[a]s the technology has improved, the developers have been pushed to further blur the lines of game play and reality." (p. 165).  Excerpts from this treatise section authored by CLC are available at:

<http://books.google.com/books?id=j85qaFj4xW0C&pg=PA174&lpg=PA174&dq=%22collegiate+licensing+market%22&source=bl&ots=tvpqeH9hn3&sig=F6SlyxxFdtQyUZZWhJGKK0Lbn7w&hl=en&ei=RA3KTMnPEMOAlAeU7aTMAQ&sa=X&oi=book_result&ct=result&resnum=3&ved=0CBkQ6AEwAjgK#v=onepage&q=%22collegiate%20licensing%20market%22&f=false>

- 7 -

1 HBSS also refers to the Initial Disclosures served in this matter is as follows: "[t]he
2 *O'Bannon* antitrust Plaintiffs already listed 43 potential fact witnesses, to include 18 third-party
3 witnesses in their initial disclosures. In sharp contrast, the *Keller* claims are narrow." Motion at 5,6.
4 This statement is misleading. The Antitrust Plaintiffs, in an effort to move this case forward as
5 quickly as possible, went to great lengths to identify numerous individuals from each defendant
6 whose names are known as a matter of public record, including but not limited to various individuals
7 identified in the Consolidated Amended Complaint. They also have many more plaintiffs in their
8 group than do HBSS' four plaintiffs, which necessarily increases the number of witnesses, but does
9 not add any special unmanageable complexity.

10 In contrast, HBSS did not list a *single* identified individual from *any* defendant in their Initial
11 Disclosures, instead listing only their four plaintiffs, followed by "unknown" employees at four
12 universities "responsible for marketing, licensing, publicity, and NCAA compliance." As HBSS no
13 doubt is aware, those are individual positions, and even those individual responsibilities are further
14 divided among numerous individuals at a university. Hausfeld simply focused on moving the case
15 forward and discharging its duties in the Initial Disclosures as best and as completely as it could at
16 this time.

17 Moreover, the Motion inappositely contrasts the alleged complexity of the antitrust and right
18 of publicity cases, including when it states at page six that "[i]ndeed, the facts in the *Keller* dispute
19 are largely undisputed." Of course, the Antitrust Plaintiffs can make the same contention, *e.g*., that
20 various former NCAA players depicted in DVDs and photographs are in fact those players, and that
21 they do not participate in the NCAA and its' members' continued licensing of those images.
22 Nonetheless, in both *Keller* and *O'Bannon*, the Defendants certainly are expected to mount various
23 factual challenges, including challenges with respect to the common issue of conspiracy.

24 The Antitrust Plaintiffs also note that the Right of Publicity Plaintiffs have in fact
25 successfully pleaded a civil conspiracy claim against EA, the NCAA, and CLC. The discovery
26 needed to prosecute that claim is *not* discussed in the Motion. If it is HBSS' current intention to
27 abandon that claim, it should so advise the all parties and its co-counsel.

- 8 -

HBSS further states that "although the *O'Bannon* Plaintiffs have proposed the same discovery schedule as the *Keller* Plaintiffs, it is difficult to see how discovery related to the antitrust claims can be completed on the same schedule." Motion at 6. Here, all Plaintiffs presented the same schedule to both the Court and Defendants in the Joint Case Management Conference Statement, signed by both HBSS and Hausfeld. It is news to Hausfeld that HBSS found its mutually-submitted schedule to be unworkable. As should be apparent, there very likely may be ways to streamline the non-video game portions of the antitrust case in view of the NCAA's standardized release forms as well as its uniform interpretation of the effect of copyright law. And there certainly is no reason now to think that the litigation of the video-game portions of the case cannot be tightly synchronized.

The Motion contains several other statements, unsupported by any declarations, that do not jibe with the undersigned's knowledge of this case, or more importantly with what Judge Wilken ordered the parties to do in crafting the consolidated amended complaint, which they expressly followed. *See, e.g.,* Motion at 6 ("drafting a consolidated amended complaint proved awkward," "as the plaintiffs prepared the complaint and discussed case management, it became apparent the cases involved vastly different discovery and proof.").

HBSS also states that "Defendants have sought to stay both actions despite the fact that *O'Bannon* is not a party to the appeal. This procedural posture also supports severing the *Keller* and *O'Bannon* claims at this time." Motion at 7. Hausfeld does not understand this point. Regardless of the consolidation posture of *Keller* and *O'Bannon*, Hausfeld does not expect the Defendants to alter their positions regarding their requested stay of all claims, and does not further understand them to be underpinned by the consolidation posture of the cases.

Finally, Hausfeld also does not understand the point regarding new rounds of motions to dismiss, eventually to be filed by Defendants and that are now "in clearer focus," as bearing on consolidation issues. Motion at 9. These motions of course have not yet been filed, but they presumably will address the same types of issues that were previously addressed, and largely rejected, by Judge Wilken previously, something that occurred prior to all plaintiffs agreeing to file the Consolidated Amended Complaint.

- 9 -

### C. Judge Wilken Should Consider Any Modifications to Plaintiffs' Counsel's Leadership Structure.

With respect to HBSS' request to modify Judge Wilken's order regarding appointment of interim co-lead counsel, as stated above, Hausfeld respectfully suggests that it should be Judge Wilken that should address any issues regarding that order, assuming that the Court reassigns the litigation back to her. Additionally, as noted above, counsel for right of publicity plaintiff Byron Bishop has sought to be appointed as co-lead along with HBSS with respect to the right of publicity claims. This fact further counsels against any immediate action by the Court.

If, notwithstanding the foregoing, the Court is inclined to make a decision now to deconsolidate and to modify the interim lead counsel structure in this matter, Hausfeld, given its current obligations to the right of publicity putative class as well as the antitrust class, respectfully suggests that the Court may wish to give consideration to the proposal set forth by counsel for Mr. Bishop. Hausfeld understands that firm to not be involved in *Pecover*, and therefore its service in a co-lead counsel role with HBSS in the *Keller* and related right of publicity based actions would mitigate any potential issues raised by Defendants as to HBSS' role in multiple actions against either NCAA or EA. *See* Doc. # 240 at 3 n. 1 (CLC opposition to the Motion, accusing HBSS of having a "significant conflict" because of its lead roles in both Keller and Pecover); Doc. #241 at 3 (EA opposition to the Motion, saying HBSS has acknowledged a conflict because of its role in Pecover).

//
//
//
//
//
//
//
//
//

- 10 -

### III. Conclusion.

For the reasons stated herein, the Antirust Plaintiffs respectfully request that the Court deny the Motion.

Respectfully Submitted,

HAUSFELD LLP

/s/ Jon T. King_____

Michael P. Lehmann (Cal. Bar No. 77152)
Jon T. King (Cal. Bar No. 205073)
Arthur N. Bailey, Jr. (Cal. Bar No. 248460)
44 Montgomery Street, 34th Floor
San Francisco, CA 94104
Tel:  (415) 633-1908
Fax:  (415) 358-4980
Email:   mlehmann@hausfeldllp.com
              jking@hausfeldllp.com
              abailey@hausfeldllp.com

Michael D. Hausfeld (*pro hac vice*)
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
Tel:  (202) 540-7200
Fax:  (202) 540-7201
Email:  mhausfeld@hausfeldllp.com

Steig D. Olson (*pro hac vice*)
HAUSFELD LLP
11 Broadway, Suite 615
New York, NY 10004
Tel:  (212) 830-9850
Fax:  (212) 480-8560
Email:  solson@hausfeldllp.com

*Plaintiffs' Interim Co-Lead Class Counsel with Primary Responsibility for Antitrust and Related Claims*

## CERTIFICATE OF SERVICE

I, Jon T. King, declare that I am over the age of eighteen (18) and not a party to the entitled action. I am a partner in the law firm of HAUSFELD LLP, and my office is located at 44 Montgomery Street, Suite 3400, San Francisco, California 94104.

On October 28, 2010, I filed the following:

**PLAINTIFF EDWARD O'BANNON, JR.'S AND ALL OTHER ANTITRUST PLAINTIFFS' OPPOSITION TO MOTION TO DECONSOLIDATE PUBLICITY RIGHTS CLAIMS AND AMEND ORDER APPOINTING INTERIM LEAD COUNSEL**

with the Clerk of the Court using the Official Court Electronic Document Filing System which served copies on all interested parties registered for electronic filing.

I declare under penalty of perjury that the foregoing is true and correct.


/                                           s/ Jon T. King_____

                                            JON T. KING